COMMERCIAL ACETYLENE CO. et al. v. ACME ACETYLENE APPLIANCE CO. et al.

(Circuit Court, E. D. Michigan, S. D.   April 26, 1911.   On Motion for Rehearing, May 11, 1911.)

No. 4,104.

1. PATENTS (§ 107*)—VALIDITY—ABANDONMENT—METHOD AND APPARATUS APPLICATIONS.

A method and the apparatus for practicing such method are distinct things, and may be the subjects of separate inventions and covered by separate patents; and, where separate applications are made for each by the same inventor, his withdrawal or abandonment of one does not affect the validity of a patent granted for the other.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 150; Dec. Dig. § 107.*]

2. PATENTS (§ 132*)—VALIDITY—INVENTION PREVIOUSLY PATENTED IN FOREIGN COUNTRY.

A foreign patent for a method is not for the same invention as an application for a United States patent for an apparatus for practicing that method so as to bring the case within Rev. St. § 4887 (U. S. Comp. St. 1901, p. 3382), and invalidate a patent granted on such application.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 188½–191; Dec. Dig. § 132.*]

3. PATENTS (§ 307*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION—SECURITY ON GRANTING.

On the granting of a preliminary injunction against infringement of a patent which will necessarily close down a business being established by defendant with good prospects, the actual damages which will result if the injunction is erroneously issued will necessarily be incapable of even approximate ascertainment, and the ordinary bond for payment of such damages will afford inadequate protection, and in such case it should be conditioned for the payment of a fixed sum estimated by the court as the fair value of the business to be destroyed.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 502, 503; Dec. Dig. § 307.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Commercial Acetylene Company and the Prest-O-Lite Company against the Acme Acetylene Appliance Company and others. On motion for preliminary injunction on patent No. 664,383. Motion granted.

Bartlett, Brownell & Mitchell and Winter & Winter, for complainants.

Day, Calfee & Fogg, for defendants.

### On Motion for Preliminary Injunction on Patent No. 664,383.

DENISON, District Judge. Under the settled rules which govern such motions and giving due force to the previous decisions upon this patent, this motion should be granted, unless the new evidence now presented by defendants is so forceful as to indicate that it would have defeated complainant if it had been presented in the former hearings. This new evidence is (1) the record of the application for the method patent, and (2) the prior British patent to the same patentees.

### (1) The Method Application.

[1] The two applications on apparatus and on method were filed together. They were complementary to each other. The inventions were correlative. One sought to patent an apparatus which employed the method, and the other sought to patent the method which employed the apparatus. Passing by various distinctions which developed, and assuming for the present that they remained perfectly correlative, it resulted that the apparatus application was granted and ripened into the patent in suit, and that the method application after rejection was abandoned. It is now urged that thereby the main idea, the "soul of the invention," was abandoned to the public.

I do not so understand the rule. The two things, method and apparatus, are distinct inventions. They may be patented by separate patents. The apparatus applicant may apply for the method, or he may not, as he chooses. If he applies for both in separate applications, he may change his mind, and withdraw or abandon either without affecting the other. The doctrine of the cases upon which defendants rely is that acquiescence in the rejection of a claim and acceptance of a grant with other claims estop the grantee from construing the grant as if it contained the claim rejected. This doctrine cannot apply to negotiations which did not mature into the grant of anything. The references and arguments which had more or less effect in inducing the abandonment are now important, not as an estoppel, but only on their merits; and on their merits they have been considered in the former decisions.

### (2) The British Patent (No. 29,750 of 1896).

[2] The full term of this patent expired at the latest in December, 1910, and I assume (without consideration) that it was not affected by article 4 *bis* of the Brussels Convention. Was it for the same invention as the patent in suit, so as to invoke section 4887, Rev. St. (U. S. Comp. St. 1901, p. 3382)?

The Leeds & Catlin Case, 213 U. S. 301, 29 Sup. Ct. 495, 53 L. Ed. 805, decides, as I read it, that a foreign patent for a method and a United States patent for an apparatus for practicing that method do not make a case under section 4887. The British patent, now involved, I think was a patent for the method. True, it discloses an apparatus, but so must a method patent usually do. Even claim 6 is not in terms of means. It is in terms of use, "the employment of, etc.," and, taking title, description, and claims together, I call it a patent for the method or process.

[3] It follows that the injunction should be granted. However, the questions now raised are at least partly new to this litigation. The Court of Appeals or this court on final hearing may take a different view; and complainant should give security. In such a case, where an injunction closes down a business which is being established and which has good prospects but no long-settled basis, a bond, conditioned in the common form to pay such damages as defendants may suffer by the issue of the injunction, is not a real protection. The damages in such a case are likely to be serious and genuine, but largely or wholly incapable of proof. In such case the condition should be to pay a fixed sum which can fairly be estimated as the value of the business which is destroyed. An injunction here will continue for several months. It will destroy the defendants' expected business for the current season, and make their investment largely worthless. I think it can fairly be anticipated that their damages by the issue of the injunction, if the injunction turns out to be wrongful, will be $5,000. Therefore the condition of the bond will be:

"That if it shall, in such cause, be finally determined either that the patent sued upon was invalid or that the defendants were not acting in infringement thereof, the complainants will pay to the defendants the sum of five thousand dollars as and for liquidated damages caused by the issuing of such preliminary injunction; and also such damages, if any, caused thereby in excess of five thousand dollars as may be assessed by the court in this cause in favor of the defendants and against the complainants on account of the issuing of such injunction, such damages both liquidated and assessed excess to be subject to be ordered to be paid in the final decree in this cause, or by proceedings herein at the foot of the decree."

### On Motion for Rehearing.

Defendants ask a reconsideration, and present a further argument upon the point that the patent in suit expired with the British patent. They call my attention to the decision of Judge Kohlsaat in the Searchlight Company Case, 188 Fed. 85, which decision, upon the former argument, either was not mentioned or escaped my notice.

The argument presented is the same which I considered in the memorandum opinion already filed. With the greatest deference to the opinion of Judge Kohlsaat, I am, upon further consideration, satisfied that my former conclusion is correct. The contrary argument seems to me to overlook the rule of the Leeds & Catlin Case that patents for a process and for the apparatus, although, in a vague sense, really for the same invention, are not within and are not covered by section 4887. Further examination confirms me also in the opinion that the British patent is really and essentially a patent for the method,

and that to consider it as an apparatus patent does violence to its structure.

In the present status of the matter, it is to be assumed that the patent in suit is for an invention very useful to the public. It was granted in 1900 for 17 years. The Patent Office did not require it to be limited on its face, although the British patent was of record in the United States Patent Office. Now ·to shorten the 17-year term into a 10-year term, is a step that I think should not be taken unless the statute is clearly applicable.

Let an order be entered denying the application for rehearing.