## COCA–COLA CO. v. NASHVILLE SYRUP CO.

(District Court, D. Tennessee. April 4, 1912.)

### No. 3,676.

**1.** TRADE-MARKS AND TRADE-NAMES (§ 45*)—MARKS SUBJECT TO APPROPRIATION—EFFECT OF STATUTE.

The effect of the proviso in Trade-Mark Act Feb. 20, 1905, c. 592, § 5 (b), 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1461), which permits the registration of "any mark * * * which was in actual and exclusive use as a trade-mark of the applicant or his predecessor from which he derived title" for 10 years next preceding the passage of the act, was to render a mark so used in its registration a valid trade-mark, although it could not originally have been the subject of a valid trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 53, 59; Dec. Dig. § 45.*]

**2.** TRADE-MARKS AND TRADE-NAMES (§ 42*)—CONSTITUTIONAL LAW (§ 209*)—STATUTE—CONSTITUTIONALITY.

The proviso in Trade-Mark Act Feb. 20, 1905, c. 592, § 5 (b), 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1461), which permits the registration as a trade-mark of any mark which had been exclusively used as such for 10 years by the applicant or his predecessors, merely creates a conclusive presumption of secondary meaning with respect to such mark, and is not subject to constitutional objection as discriminatory legislation.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 47; Dec. Dig. § 42;* Constitutional Law, Cent. Dig. § 678; Dec. Dig. § 209.*]

**3.** TRADE-MARKS AND TRADE-NAMES (§ 95*)—INFRINGEMENT.

A preliminary injunction granted to restrain infringement of the name "Coca-Cola" as a trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*]

**4.** TRADE-MARKS AND TRADE-NAMES (§ 57*)—INFRINGEMENT.

The use of an infringer's name in connection with a trade-mark, instead of that of the owner does not render the unauthorized use of it less of an infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 65; Dec. Dig. § 57.*]

**5.** TRADE-MARKS AND TRADE-NAMES (§ 95*)—SUIT FOR INFRINGEMENT—PRELIMINARY INJUNCTION—BOND.

On the granting of a preliminary injunction against infringement of a trade-mark, the effect of which, if wrongfully granted, will be to cause a loss to defendant not capable of fair approximation, it is competent for the court to fix a sum as liquidated damages, and require complainant to give security for its payment, if final relief should be denied.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*]

**6.** TRADE-MARKS AND TRADE-NAMES (§ 3*)—DESCRIPTIVE CHARACTER OF WORDS—"COCA-COLA."

In the absence of a definite popular meaning of either the words "coca" or "cola," as indicating either coca leaves or cola nuts, or any particular constituents or compounds of the same, the word "Coca-Cola" should probably be regarded as merely suggesting the elements of the compound, and not as descriptive of its contents and in effect an arbitrary combination of words not describing the elements of the compound, but serving merely to identify it as a trade-mark name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4-7; Dec. Dig. § 3.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by the Coca-Cola Company against the Nashville Syrup Company. On motion for preliminary injunction. Motion granted.

See, also, 200 Fed. 157.

Candler, Thomson & Hirsch, of Atlanta, Ga., and Pritchard & Sizer and Chambliss & Chambliss, all of Chattanooga, Tenn., for plaintiff.

W. R. Chambers, E. J. Smith, Jno. R. Aust, and Perkins Baxter, all of Nashville, Tenn., for defendant.

Memorandum Opinion on Motion for Preliminary Injunction.

SANFORD, District Judge. As counsel for both parties have stated that they desire a final hearing at an early date at which the affidavits used at the hearing of this motion are to be largely used as evidence, I shall, in ruling upon this motion, merely state in a general way the conclusions which I have reached after a careful consideration of the motion and arguments and briefs of counsel in reference thereto, without elaboration.

[6] 1. The question whether the compound word "Coca-Cola" is so descriptive of the constituents of the beverage that it was not originally subject to appropriation as a trade-mark is one of such doubt that if this were the only question in the case, the complainant would not, I think, be entitled to a preliminary injunction, in accordance with the view suggested by Judge Grubb in his memorandum opinion in Coca-Cola Co. v. Deacon Brown Bottling Co., 200 Fed. 105, in the United States District Court for the Northern District of Alabama; although I incline to the view, that, on account of the absence of a definite popular meaning of either the words "coca" or "cola" at the time this compound phrase was first appropriated as a trade-mark or at the present time, as indicating either coca leaves or cola nuts or any particular constituents of the coca leaf or the cola nut, or any definite compound of the same, the word "Coca-Cola" should be regarded, at the most, as merely suggesting the elements of the compound and not as descriptive of its contents, and as in effect an arbitrary combination of words not describing the elements of the compound to the popular mind, but serving merely to identify it as a trade-mark name.

[1] 2. It is, however, unnecessary to determine this question upon this motion, for the reason that I am of opinion that the validity of this trade-mark is sufficiently established for the purpose of a preliminary injunction by the registration of this compound word as a trade-mark by the complainant in 1905, after the passage of the Act of February 20, 1905, c. 592, 33 Stat. 724 (U. S. Comp. St. Supp. 1911, p. 1459), and by the evidence of the actual and exclusive use of these words as a trade-mark by the complainant and its predecessors in interstate commerce for ten years preceding the passage of that act. By such actual and exclusive use this compound word acquired at least a secondary meaning indicative of the origin and manufacture of this compound by the complainant and its predecessors in title.

The effect of the proviso in section 5 of the Act of 1905 was to make a name subject to registry as a valid trade-mark, through such

prior use, even although the words were originally merely descriptive and not the subject of a valid trade-mark. Thaddeus Davids Co. v. Davids (C. C. A., 2) 178 Fed. 801, 102 C. C. A. 249; Coca-Cola Co. v. Bottling Co., supra. And while it was held by Judge Hand in American Lead Pencil Co. v. Gottlieb (C. C.) 181 Fed. 178, that the prior exclusive use for ten years created a presumption of secondary meaning, more recently, on the final hearing in the Circuit Court, in Thaddeus Davids Co. v. Davids, reported in the Trade-Mark Journal for October, 1911, p. 215 [190 Fed. 285], it was held by Judge Hough, in accordance with the opinion of the Court of Appeals on demurrer, above cited, that a mark registered under the Act of 1905, after such ten years prior exclusive use, becomes a valid trade-mark. This view is strengthened by the fact of the change in the bill as first reported by the Patent Committee of the House of Representatives to the form in which it was finally enacted by an amendment by which the words "lawful use" were changed to "exclusive use," as appears from a note on page 219 of the above-mentioned reporter.

[2] 3. Even if it be assumed that the Constitution prohibits Congress from enacting discriminatory legislation, a question reserved without decision in District of Columbia v. Brooke, 214 U. S. 138, 29 Sup. Ct. 560, 53 L. Ed. 941, I am of opinion that section 5 of the Act of 1905, which in effect merely gives a conclusive presumption of secondary meaning to a trade-mark in actual and exclusive use for a period of ten years, is not discriminatory or based upon an arbitrary classification, but upon a reasonable and sound distinction, and that there is no valid constitutional objection to the validity of this section. Coca-Cola Co. v. Bottling Co., supra.

4. As this suit does not involve the enforcement of the dispensing contracts of the complainant, the alleged illegality of such contracts under the Anti-Trust Act is not a ground for denying the complainant relief against an infringement of its trade-mark. Coca-Cola Co. v. Bottling Co., supra.

5. A ground for denying the injunction is not established by any sufficient evidence showing the introduction of a deleterious substance in the complainant's compound. Coca-Cola Co. v. Bottling Co., supra.

6. I likewise find no sufficient ground for denying the injunction in the use by the complainant of the word "nutrient" in the application for trade-marks.

[3, 4] 7. Therefore, being of opinion that the complainant has shown a valid trade-mark in the words "Coca-Cola," of which the infringement by the defendant is clear (Battle & Co. v. Finley [C. C.] 45 Fed. 796; Eagle White Lead Co. v. Pflugh [C. C.] 180 Fed. 579, and many other cases), it follows that a preliminary injunction should issue to prevent the infringement thereof by the defendant pending this litigation by the use of the word "Coca-Cola" as part of the name of its compound. Coca-Cola Co. v. Bottling Co., supra. The addition of an infringer's name to a trade-mark in place of the owner's does not render the unauthorized use of it the less an infringement. Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526.

8. And while I incline to the opinion that in view of the similarity

of the defendant's labels to those of the complainant in the prominent use of the word "Coca-Cola," and the fact that the defendant by giving its compound the name Coca-Cola and selling it to the proprietors of soda fountains at which it is dispensed without an opportunity on the part of an ordinary customer to see the label, leads, as a natural consequence, to the easy substitution by an unscrupulous dealer of the defendant's syrup in lieu of the complainant's beverage where the customer merely asks for Coca-Cola, intending to obtain the complainant's beverage, commonly known under that distinctive name, the complainant has made out a case entitling it likewise to a preliminary injunction to restrain unfair competition, independently of the question of the validity of its trade-mark, it is not now necessary to definitely determine this question.

[5] 9. It is evident, however, that an injunction bond conditioned in the ordinary form to pay such damages as the defendant may suffer by the issuance of an injunction will not be a real protection, since although damages to the defendant would probably be serious and genuine, they would be largely or wholly incapable of proof.    In the recent case of Acme Acetylene Appliance Co. v. Commercial Acetylene Co., 188 Fed. 89, in the United States District Court for the Eastern District of Michigan, Judge Denison, sitting at circuit, being of opinion that the damages which would result to the defendants by the issue of an injunction, if it should turn out to be wrongful through the destruction of their expected business for the current season, could be fairly anticipated to be $5,000.00, directed that the penalty of the bond should be $10,000.00, and that its condition should be such that if it should be finally determined either that the patent sued upon was invalid, or that the defendants were not acting in the infringement thereof, the complainants should pay the defendants the sum of $5,000.00 as and for liquidated damages caused by the issuance of such preliminary injunction, and also such damages caused thereby in excess of $5,000.00 as might be assessed by the court in the cause in favor of the defendants and against the complainants on account of the issuance of the injunction.   The form of this order was expressly approved by the Circuit Court of Appeals in Acme Acetylene Appliance Co. v. Commercial Acetylene Co., 192 Fed. 321, 329, 112 C. C. A. 573.   For similar reasons I am of opinion that the penalty of the injunction bond in this case should be $10,000.00, and that the condition of the bond should be that, if it should in this case be finally determined that the complainant has no valid trade-mark in the use of the compound word "Coca-Cola," or that the defendant is not infringing the same, or that the complainant is not entitled to an injunction to restrain the use of the word "Coca-Cola" by the defendant on account of unfair competition, the complainant will pay the defendant the sum of $5,000.00 as and for liquidated damages caused by the issuance of this preliminary injunction, and also such damages in excess of $5,000.00 as may be assessed by the court in this cause in favor of the defendant and against the complainant on account of the issuance of this injunction.

An order will be entered accordingly.