## PLANTEN v. GEDNEY.

### (District Court, S. D. New York.   March 1, 1915.)

**1. TRADE-MARKS AND TRADE-NAMES ☞45—EFFECT OF REGISTRATION.**

Though Act Feb. 20, 1905, c. 592, § 16, 33 Stat. 728 (Comp. St. 1913, § 9501), merely provides that the registration of a trade-mark shall be prima facie evidence of ownership, and does not make it prima facie evidence of validity, the decision of the Commissioner of Patents that a device for which registration is asked may be the subject of exclusive appropriation as a trade-mark is entitled to respect as being prima facie correct; the value of this presumption depending upon whether any opposing interest has been heard, and whether the whole situation has been fully considered upon a full representation of all the facts, as the act authorizes the registration of nothing but a trade-mark, and this incidentally involves the consideration by the Commissioner of whether the device is the subject of exclusive appropriation.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 53, 59; Dec. Dig. ☞45.]

**2. TRADE-MARKS AND TRADE-NAMES ☞6—NAMES AND MARKS SUBJECT TO APPROPRIATION—DESCRIPTIVE WORDS OR LETTERS.**

Where the letters "C & C," used in connection with capsules in the drug trade and with the users of drugs for a certain class of diseases, referred and were understood to refer to the drugs of which the capsules were composed, such letters could not be appropriated as a trade-mark, since, while letters or initials may in some cases be exclusively appropriated for trademark purposes, it is essential that the primary object in using them be to indicate origin or ownership, and not the grade, composition, or quality of the article.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 10; Dec. Dig. ☞6.]

**3. TRADE-MARKS AND TRADE-NAMES ☞45—EFFECT OF REGISTRATION.**

Act Feb. 20, 1905, simply authorizes the registration of trade-marks, and does not prescribe what may be valid trade-marks, and the validity of a trade-mark must depend upon general principles and rules of law, and not upon its registration, which cannot validate a trade-mark not previously valid.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 53, 59; Dec. Dig. ☞45.]

**4. TRADE-MARKS AND TRADE-NAMES ☞59—NAMES AND MARKS SUBJECT TO APPROPRIATION—DESCRIPTIVE WORDS OR LETTERS.**

Where the letters "C & C," as used in connection with capsules intended for a certain class of diseases, was understood in the drug trade and among the users of drugs for such diseases as referring to the drugs of which the capsules were composed, a registered trade-mark, "Planten's C & C or Black Capsules," if valid at all, was valid only in its entirety, and could be infringed only by the use of the entire trade-mark, or some colorable imitation of it as a whole, and was not infringed by defendant's use of the words "Gedney's C & C (Black) Capsules," especially where the descriptive terms had been used by defendant in common with plaintiff long prior to plaintiff's registration of his trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68-72; Dec. Dig. ☞59.]

**5. TRADE-MARKS AND TRADE-NAMES ☞43—COLOR OF BACKGROUND.**

Where an application for the registration of a trade-mark stated that the mark had usually been printed by a rectangular block, the black rectangular figure upon which the words were placed was no part of the trade-mark, however important on the question of unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48, 49; Dec. Dig. ☞43.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TRADE-MARKS AND TRADE-NAMES ⬚45—REGISTRATION—FRAUD.

That the registration of a trade-mark was secured on an ex parte application, and upon the statement of the applicant of long use and of his belief that he was the only person entitled to, or who had the right to, use the matter embraced in his alleged trade-mark, did not constitute fraud, vitiating the registration, though the granting of registration upon a statement of that character might lead to very loose and one-sided proceedings.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 53, 59; Dec. Dig. ⬚45.]

7. FRAUD ⬚50—PRESUMPTIONS AND BURDEN OF PROOF.

While fraud vitiates every act, it will not be presumed.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 46, 47; Dec. Dig. ⬚50.]

In Equity. Suit by Hermanus R. Planten, doing business as H. Planten & Son, against James W. Gedney. Bill dismissed.

Stephen J. Cox, of New York City, and Wm. E. Lamb, of Washington, D. C., for plaintiff.

May & Jacobson, of New York City, for defendant.

EVANS, District Judge. The act of February 20, 1905, authorizes the registration of trade-marks used in interstate commerce in the manner provided therein. On April 28, 1905, John Rutgert Planten filed an application for the registration of a trade-mark which the applicant asserted to consist of the words and characters: "Planten's C & C or Black Capsules." The record and file wrapper pertaining to this application show that certain amendments were made, some of which were canceled. One of those which were canceled was in this language:

"The mark has usually been printed by a rectangular block with the letters in intaglio."

The result of this application was the registration (as shown by certificate No. 51,356) of a trade-mark in this form:

On August 3, 1907, the same applicant filed a petition for the registration of another trademark, and in his application made this statement:

"This trade-mark has been continuously used in my business since about the year 1890."

This application seems to have been readily passed without any delay, and the trade-mark was registered (as shown by certificate No. 66,108) in the following form:

Alleging that the defendant had infringed each of these trade-marks, the plaintiff instituted this action to enjoin further infringement and for an assessment of damages and the profits, gains, and advantages derived by the defendant from the infringement. The plaintiff also alleged that the defendant had injured him by attempts to imitate his trade-mark and to palm off upon the public goods marked in such

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a way as to deceive them into the belief that they were the manufacture of the plaintiff.

The proceedings in the Patent Office were altogether ex parte and without any actual notice to the defendant, and these proceedings did not come to his knowledge until several years after the granting of the registrations. The defendant by his answer put in issue the various allegations of the bill of complaint, and a great mass of testimony, supposed to be more or less applicable to the issues thus raised, was heard and has been very carefully considered by the court.

[1] Always having in mind the ruling of the Supreme Court in Thaddeus Davids Company v. Davids Manufacturing Company, 233 U. S. 461, 34 Sup. Ct. 648, 58 L. Ed. 1046, and that of the Circuit Court of Appeals (6th Circuit) in the Coca-Cola Cases, 200 Fed. 153 and 157, and the provisions of section 16 of the act of 1905, which makes the registration of a trade-mark prima facie evidence, not of validity, but of "ownership," of the trade-mark, we come to a brief consideration of the question of the validity of the trade-marks themselves and whether they have been infringed. By the act of 1905 the Patent Office is not authorized to register anything but a "trade-mark," and this, at least incidentally, involves the consideration by the Commissioner of Patents of whether a device for which registration is asked may be the subject of exclusive appropriation as the trade-mark of any person, and that officer's decision of that proposition is entitled to respect and as being prima facie correct, though the act of 1905 does not of itself so provide. The value of this presumption must depend in a given case upon whether any opposing interest has been heard and upon whether the whole situation has been fully considered upon a full representation of all the facts—for example, upon as full a representation of them as has been made on the trial of this case. In this connection the court has been at pains to examine the record and file wrapper in case of each application, as they show what was done in the Patent Office in the purely ex parte proceeding there had.

[2] In stating the opinion of the Supreme Court in Brown Chemical Co. v. Meyer, in 139 U. S. at page 542, 11 Sup. Ct. at page 626, 35 L. Ed. 247, Mr. Justice Brown said:

"The general proposition is well established that words which are merely descriptive of the character, qualities, or composition of an article, or of the place where it is manufactured or produced, cannot be monopolized as a trade-mark."

Many illustrations of this general proposition are given in text-books. Paul on Trade-Marks, §§ 63, 64; Hopkins on Trade-Marks, §§ 40, 41. Letters or initials may in some cases be exclusively appropriated for trade-mark purposes; but in such cases it is essential that the primary object in using them be to indicate origin or ownership, and not the grade or quality of the article. Columbia Mill Co. v. Alcorn, 150 U. S. 463, 14 Sup. Ct. 151, 37 L. Ed. 1144; Paul on Trade-Marks, § 52.

In view of these general propositions of law it becomes essential that we should ascertain from the testimony presented whether the two trade-marks, registered as we have shown, were made up of words

or initials which were merely descriptive of the articles to which they were affixed, and whether the primary object in using them was to indicate the origin or ownership of the article, and not merely its grade, composition, or quality. Upon the testimony the court finds the controlling facts to be:

(1) That in the drug trade, and with the users of drugs for certain venereal diseases, the letters "C & C" meant and were understood to mean only one thing, namely, cubebs and copaiba. This meaning was as apparent to them as if the names of the drugs were spoken or written in full. And it is conceivable, owing to the purpose for which this combination of drugs was designed, that the slight degree of privacy afforded by the use of initials might be desirable, though that is not indicated by any positive testimony.

(2) The defendant succeeded his mother, who had herself succeeded defendant's father, in the business yet conducted by defendant. Altogether they had conducted that business since before 1840, and all that time capsules composed of cubebs and copaiba had been made and sold by them in succession, and for most of that long time they had used the letters "C & C" in describing the article, and for a large part of that time they had in many instances added to those letters the word "black" in brackets as a specific description of the result upon the capsules of an infusion of coloring matter. This use was so general with the defendant and his predecessors that it was recognized by all their customers, druggists and users alike, in ordering or describing defendant's capsules as well as those of plaintiff. This use by defendant was in many ways, viz., in orders or in bills rendered, or in its literature, whether in extensive advertising in trade journals and newspapers or upon slips inclosed in boxes containing the capsules.

(3) For many years previous to 1905 the form, color, and general appearance of the boxes and other containers used by the plaintiff and his predecessors and by the defendant and his predecessors closely resembled each other, and of this neither side complained.

(4) The plaintiff, who succeeded his father, and who had himself succeeded *his* father (plaintiff's grandfather), in the business, had also used the letters "C & C" and the words and letters "Planten's C & C or Black Capsules" in the same sense as that of defendant. But the court finds that these uses, except that of the name Planten, and probably that of the color word "black," were of a distinctly later origin and beginning than were those of the defendant and his predecessors.

As to the use of the initials "C & C," the plaintiff claims under a registration in the application for which (as we have already stated) his father had said that:

"This trade-mark has been continuously used in my business since about the year 1890."

The other form, viz., that of "Planten's C & C or Black Capsules," had an earlier beginning; but defendant and his predecessors had used the initials "C & C" from a much earlier time. The long-continued practice of the plaintiff and his predecessors was to affix to

their packages on the outside the letters "C & C," or their other form, "Planten's C & C or Black Capsules," while the defendant did not so affix his until after the registrations obtained by the plaintiff. After that event the defendant upon one certain form of his boxes used this language, to wit, "Gedney's C & C (Black) Capsules," though it was not surrounded by rectangular lines as was that of the plaintiff. It is this particular use which the plaintiff claims is an infringement of his first obtained registration. Upon the testimony we have concluded:

[3] First. That the letters "C & C," as used in certificate of registration No. 66,108 and in the alleged trade-mark therein described, mean and were known to mean "Cubebs and Copaiba"—nothing more nor less—and therefore are purely descriptive, and do not mean and were not intended to mean or to refer to origin or ownership, and therefore this alleged trade-mark comes within the rules laid down in the cases of Brown, etc., Co. v. Meyer, 139 U. S. 542, 11 Sup. Ct. 625, 35 L. Ed. 247, and Columbia, etc., v. Alcorn, 150 U. S. 463, 14 Sup. Ct. 151, 37 L. Ed. 1144, and must be held to be invalid. The act of 1905 does not prescribe what may be valid trade-marks, but simply authorizes the "registration" of trade-marks. Such a registration can in no way validate a trade-mark which was not previously valid. The validity of a trade-mark must depend upon general principles and rules of law and not upon its registration. As to this alleged trade-mark, the bill must be dismissed.

Second. The bill, so far as it is based upon allegations of unfair competition, must also be dismissed; but this should be without prejudice. The testimony does not, we think, warrant relief upon that ground; but as some question of jurisdiction was raised upon this phase of the case, which may be well founded, even if not pressed at the argument, we direct the form of decree indicated, although certain late decisions settle the question of the right to join in one suit claims of infringement with claims of unfair competition. In the cases referred to the litigants were of diverse citizenship, while here both parties are citizens of New York—hence the question of jurisdiction.

[4] Third. It remains to consider whether the trade-mark covered by registration certificate No. 51,356 is valid, and, if so, whether it has been infringed by the defendant. In his application for registration plaintiff's father and predecessor in ownership stated:

"My trade-mark consists of the words and characters, 'Planten's C & C or Black Capsules.'"

As we have seen, it was registered in that exact form upon a black background of rectangular shape. We have already stated our conclusion to be that the words "C & C," when used upon the drugs referred to in the testimony, were altogether descriptive, and were plainly and always understood to describe and refer to cubebs and copaiba as the component parts of the capsules. It cannot be doubted that the word "black" is equally descriptive in character. All the words in the trade-mark, including the name "Planten," mean nothing more nor less than cubeb and copaiba capsules made black by

some coloring matter used by the maker, Planten. We take it to be clear enough that the entire trade-mark is merely descriptive of a manufactured article, unless that characteristic is removed by the use of the possessive prefix "Planten's."

If our conception of the situation be correct, the case respecting iron bitters (139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247), that, respecting rubber (128 U. S. 598, 9 Sup. Ct. 166, 32 L. Ed. 535), and others noted in Paul on Trade-Marks, §§ 64, 66, would seem clearly to apply and consequently to invalidate the device as a trade-mark that would enable Planten to enjoy a monopolistic appropriation of certain descriptive terms, all of which, except the word "Planten," had been used in common by the plaintiff and the defendant and their respective predecessors, as applied to cubebs and copaiba capsules, long before the plaintiff's predecessors applied for the registration we have referred to. We think the initials "C & C" and the word "black," being in this connection plainly descriptive and indicative of the component ingredients of the capsules, were open to all manufactures of such capsules, and that it would be a special hardship to the defendant to be deprived of the right to use them generally after he and his predecessors had done so continuously for a time beginning long before 1905.

If the defendant, or indeed the plaintiff, instead of using the initials "C & C," had used the words "Cubebs and Copaiba," for which the initials stand, then, of course, under the cases cited, there could be no trade-mark composed of these words descriptive of the ingredients of the capsules. This being manifestly true, can it make any difference in the equities of this litigation that initials were used which both parties to the litigation and their respective predecessors and that part of the entire public to which they both addressed themselves perfectly well knew meant precisely what would have been meant had the words themselves, instead of the indicating initials, been employed? Obviously not, because both meant the same things and both were known to be merely descriptive words. And the same is true as to the word "black," which all knew to be entirely descriptive.

In short, the initials "C & C" conveyed to all concerned the accurate information that all the capsules were made of cubebs and copaiba, just as the word "black" indicated the color of the capsules. The information thus imparted was just as true of defendant's capsules as it was of the plaintiff's, and the same means of conveying this information had been used by each of the parties and their predecessors for many years prior to 1905. Can it be possible that the ex parte registration of a trade-mark·must shut off defendant's right thus to convey this information? We think the registration act of 1905 had no such purpose in view, and it does not deprive the defendant of the right to do as he is doing, and which for over 40 years he has continuously done. Certainly we think the facts may thus be communicated, provided there is no use of the name "Planten." The complainant cannot, under the facts of this case, have the exclusive right to communicate the descriptive facts in the ways heretofore in use by both parties. We think light is thrown upon this phase of the case

by Amoskeag, etc., Co. v. Spear, 2 Sandf. (N. Y.) 599, and Paul on Trade-Marks.

[5] We may pass by the question of the validity of the trade-mark now under consideration, and content ourself with saying that, if it is valid, it can only be so in its entirety, not in this, however, including the black rectangular figure upon which the words are placed; that background being, in our opinion, no part of the trade-mark, however important it might become upon the question of unfair competition. But, under all the circumstances disclosed by the testimony, we think this case (certainly as between this plaintiff and this defendant) calls for a very strict limitation of the trade-mark, and we hold that, as between them, at least, infringement thereof must be confined to the use of the entire trade-mark, or some colorable imitation of it as a whole. We confess, indeed, to some suspicion that, when the defendant began placing the words "Gedney's C & C (Black) Capsules" on the outside of his boxes, he did what might excite comment; but as he did not in any way thereby indicate that the contents of the box were "Planten's" product, but explicitly stated that they were "Gedney's," we think he was within his rights, and did not bring himself within the provisions of section 16 of the act of 1905. Consequently we hold that no infringement has been proved.

Fourth. It is insisted by the plaintiff that to constitute a trade-mark in the legal sense the device used must be affixed to or in some way placed upon the article itself, or upon the outside of a container of the article; while the defendant insists that the trade-mark may appear on the literature advertising it, if some of that descriptive literature accompanies the article as it passes to the public. Without undertaking to pass upon the merits of these contentions, we will only observe that it might be a somewhat far-reaching doctrine to hold as a general rule that a trade-mark might be hid away among a mass of advertising matter accompanying an article of commerce, instead of being placed openly (and presumably advantageously) upon the outside of it. Possibly such voluntary obscuration of his trade-mark might deprive the owner of all the advantages of it, both legal and commercial.

[6, 7] Fifth. As we have pointed out, section 16 of the act of 1905 provides that the registration of a trade-mark shall be prima facie evidence of "ownership." Conceding this, it is nevertheless insisted that the registration was obtained by fraud, and therefore should not be given any weight. It may be regarded as generally true that fraud vitiates every act, but it is equally true that fraud is not to be presumed. It has been pleaded, and the plea has been attempted to be sustained by proof, that the registrations in these cases were obtained by the fraud of the applicant. Undoubtedly they were secured in a purely ex parte way, and upon the statement of the applicant of long use and of his belief that he was the only person entitled to or who had the right to use the matter embraced in his alleged trade-mark; but, while granting registration upon a statement of that character by an applicant may lead to very loose and one-sided proceedings before the Patent Office, we cannot perceive that any proof has been offered to sustain the allegation of fraud. Indeed, we think there has been

a total failure to sustain this claim made by the defendant in his pleading.

The result must be the dismissal of the bill, with costs, but with the qualification that, so far as the bill seeks relief upon the ground of alleged unfair competition in trade, the dismissal will be without prejudice to plaintiff's right again to sue for relief upon that single ground.

A decree accordingly will be entered.