**SCHICK DRY SHAVER, INC., et al. v. GENERAL SHAVER CORPORATION et al.**

No. 2658.

District Court, D. Connecticut.

Nov. 22, 1937.

Drury W. Cooper, of New York City, and Fennel & Dimenstein, of Stamford, Conn., for plaintiffs.

Samuel E. Darby, Jr., of New York City, and George H. Cohen, of Hartford, Conn., for defendants.

THOMAS, District Judge.

This is a motion for preliminary injunction in a patent infringement suit against General Shaver Corporation and Remington Rand, Inc. In their bill of complaint, plaintiffs charge defendants with infringement of three patents by manufacturing and selling electric razors, commonly known as "dry shavers."

The patents sued on are No. 1,721,530, issued July 23, 1929, on an application filed March 31, 1928; No. 1,747,031, issued February 11, 1930, on an application filed July 2, 1928; and No. 1,757,978, issued May 13, 1930, on an application filed April 23, 1928. All of these patents relate to shaving implements or shaving machines and were issued to Jacob Schick. The title to the patents is not disputed.

The validity of the claims in suit of the first-mentioned patent, No. 1,721,530, has been sustained by the Circuit Court of Appeals for this circuit in Schick Dry Shaver, Inc., et al. v. Dictograph Products Co. Inc., 89 F.2d 643, 644. Although the claims were held valid, the Circuit Court further held that the device manufactured by the defendant therein did not infringe.

Plaintiffs seek to justify this motion because of the former adjudication and rely not only on the claims in controversy in the former suit, but also on additional claims, to which reference will be made hereinafter.

Patent No. 1,721,530 relates to a shaving implement, and the object of the invention is well stated at the beginning of the specification as follows:

"This invention relates to an improved shaving implement that has a shear plate that rests against the face and has a cutter operating under the plate to cut the hairs. The machine can be used for shaving without the use of lather.

"The invention comprises an implement in which the shearing action takes place practically on the surface of the skin as the shearing plate or its equivalent is extremely thin. The thin plate is held in place against flexing and collapsing under inward pressure by the cutter which is disposed inside the shearing plate to co-operate with it in shearing and to support it against flexing."

And the inventor further said:

"The device is constructed to present a shear plate for movement along the skin, which plate has slots with both ends open. This form therefore provides a plate with no defined front or back but which can be moved back and forth across the skin and can therefore rest close to the skin and the hairs that are still uncut and in the slots do not raise the device out of close contact with the skin. This allows a very close shave to be accomplished. The inside cutter that operates across these slots and transverse relative to the direction of movement of the machine cuts across the edges of the slots to sever the hair, the slots being close together to form a series of narrow teeth which are prevented from moving inwardly by the support given by the inside cutter, which cutter has its teeth arranged on the end as differentiated from prior cutting devices in which the movable cutters have the teeth operating alongside the shear plate."

So it will be noticed that in his specification Schick emphasized a very thin shear plate having slots extending from side to side, making each side so alike that the plate had "no defined front or back," which plate served throughout its width as one side of the shearing means in co-operation with a cutter bar inside that not only com-

pleted the cutting means, but also supported the thin shear plate to prevent flexing. And he pointed out expressly that this construction differed from the prior art in that the cutter "has its teeth arranged on the end" instead of "operating alongside the shear plate." The Circuit Court of Appeals in the prior litigation stated that it would have been a bit more accurate to have said that Schick's cutting means would operate not only throughout the length of the slots on the end, but also at the two edges of the shear plate, or, as Schick said, "alongside the shear plate."

The Circuit Court of Appeals also said that: "The movement of the cutter bar inside is very rapid. It is actuated by electricity through a suitable device carried in the handle, and the cutter bar is kept tightly against the inside of the shear plate by set screws, though in the commercial form Schick's cutter bar is so spring-held. The approved method of use is to move the shear plate back and forth across the surface to be shaved in directions parallel to the slots in what has been called a 'scrubbing action.' What hairs enter the slots at the ends will be at once clipped off because of the rapid reciprocating motion of the cutter bar and what enter along the slots will likewise be so cut."

In the prior litigation claims 1 and 13 were relied on, and they read:

" '1. A shaving implement comprising a shearing plate of extreme thinness to rest against the skin, having an opening for the reception of hair, a cutter to travel across the opening to provide a shear cut with one side of the opening, and means for holding the parts to insure the supporting of the plate against flexing by means of the cutter.'

" '13. A shaving implement comprising a shear-plate with slots extending from side to side, a cutter under the plate and having teeth to co-operate with the edges of the slots in cutting, and means for operating the cutter transversely of the slots.' "

Of the prior art patents on record in the earlier suit, the Circuit Court of Appeals deemed only the British patent No. 753, issued to Appleyard in 1914, worthy of serious consideration. Claims 1 and 13 were held valid over Appleyard, the court deciding that Schick, regardless of how much he may have taken from Appleyard, made the following patentable improvements which he disclosed and covered in his claims in suit:

1. He provided a shear plate throughout of extreme thinness;

2. Said plate having slots extending all the way across from edge to edge; and

3. He combined the cutter bar with the shear plate in such a manner that the said bar supports the plate, throughout its entire width against flexing.

In connection with the feature of supporting the shear plate against flexing, it should be noted that Schick provided teeth on the cutter bar which were wider than the slots in the shear plate so that, in all positions of the cutter bar movement, some parts of all cutter teeth would support some parts of each blade in the shear plate between the slots in the latter.

In addition to the claims which have been sustained in the prior suit, the plaintiffs rely here on claims 14, 16, 17, and 19 of the Schick patent, No. 1,721,530. Of these claims the following will serve as an example: "14. A shaving implement comprising, in combination, a series of thin and narrow blades having outer surfaces adapted to lie against the surface of the skin while shaving, said blades being separated by slots of such width as to permit at least one hair to enter, said width being so proportioned in respect to the thin and narrow dimensions of said blades as to prevent the surface of the skin being shaved from extending above the rear surfaces of the blades when the blades contact the surface of the skin during a shaving operation, cutter means having shearing edges in contact with the rear surfaces of the blades, and means for operating said cutter means in relation to the blades."

### Defendants' Dry Shaver.

The shearing head of this shaver comprises, like the Schick shaver, two parts: (1) An outer stationary cutter of hollow form, and (2) an inner cutter adapted to be reciprocated within the outer cutter by a motor in the handle of the device. The skin-engaging portion of the outer cutter constitutes a shear plate, which is provided with two sets of narrow slots extending transversely from each side of the shear plate toward the center thereof, but the two sets of slots are separated by a bar in the longitudinal center line of the plate. These two sets of slots are not located in the same plane, but in planes at an angle one to another. In the meeting line of these two planes is located the separating bar, which is provided with

grooves joining the two sets of slots, somewhat like the center section of the skin-engaging portion of the Appleyard construction. However, the bar in the defendants' shaver is narrow compared with the bar in the Appleyard device. The shear plate of defendants' outer cutter is thinner than that of the Schick shaver, but it is claimed to be self-supporting due to the fact that the teeth thereof are "arched" and supported by the central longitudinally extending bar and by the arched sides of the plate. The width of the teeth of the inner cutter is narrower than the width of the slots in the shear plate, and consequently the defendants aver that if the shear plate or the teeth thereof were flexible or depressible in normal use, the teeth of the inner cutter would project through the relatively wider slots in the shear plate and the device would not only be inoperative but would be wrecked.

■ For the present purposes, validity of claims 1 and 13 must be assumed. There remains therefore for determination the question whether infringement has been shown to the necessary degree of certainty.

■ It is true that defendants' shaver includes spring-pressed means for causing the inner cutter to contact with the inner surface of the shear plate, but it does not satisfactorily appear that, although the shear plate is of extreme thinness, the cutter is relied on for supporting the said plate against flexing, as called for in claim 1 of the patent in suit.

As to claim 13, I am not satisfied from the affidavits before me that defendants' shear plate has slots extending from side to side. Plaintiffs argue that defendants' shaver really has two separate shear plates, which are divided by the central longitudinally extending bar, and that in each shear plate the slots extend from side to side. In making this argument plaintiffs seem to be treading on dangerous ground because, if claim 13 is to be interpreted so as to include a structure of this type, it might be readable on and thus anticipated by the Appleyard patent.

As to the remaining claims in issue, which are here for the first time presented for adjudication, defendants call attention to the following prior art patents: Stearns et al. patent, No. 1,158,741, granted November 2, 1915; Stearns et al. patent, No. 1,205,576, granted November 21, 1916; Andis patent, No. 1,671,265, granted May 29, 1928, on application filed June 26, 1926. These patents were before the District Court, Schick Dry Shaver v. Dictograph Products, 16 F.Supp. 936, in the prior litigation but only as affecting the validity of claims 1 and 13, relied on in that case.

I am unable to decide with certainty from the affidavits the extent to which these prior patents may affect the validity of the claims additionally relied on by the plaintiffs. The file wrapper of the patent does not throw much light on this question, the claims having been inserted into the application after allowance. It appears to me that these claims must, of necessity, in view of Appleyard, include the limitations of claims 1 and 13, and, consequently, I have the same doubts regarding infringement thereof as I expressed above regarding the infringement of claims 1 and 13.

■■ My opinion is that preliminary injunctions should not be granted, even though the validity of the patent is conceded, when there is a serious doubt as to existence of the infringement alleged. A party is not entitled to an injunction for the reason that he has a valid patent, but for the reasons that he has a valid patent and that the defendant plainly infringes his rights thereunder and protected thereby. When there is a serious doubt of the existence of both these facts, or either, preliminary injunctions should not be granted. In short, complainant's case should be reasonably free from doubt on every question necessary for him to establish in order to obtain the relief demanded, and the case should be established other than by ex parte affidavits, where every essential allegation is controverted by others of the same character and of substantially equal credibility.

In view of the foregoing, the motion for a preliminary injunction must be and hereby is denied. Submit order accordingly properly consented to as to form.