## AUTOMATIC DEVICES CORPORATION v. CUNO ENGINEERING CORPORATION.

### No. 97 Civ.

District Court, D. Connecticut.

Sept. 19, 1939.

Thomas J. Byrne, of New York City, and Johnson, Kline & Smyth, of Bridgeport, Conn., for plaintiff.

Robert Starr Allyn, of New York City, and Clarence W. Bronson, of New Haven, Conn., for defendant.

HINCKS, District Judge.

This is a suit charging the infringement of Claims 2, 3 and 11 of a patent, 1,736,544,

issued to Mead on November 19, 1929, upon an application filed in 1927. The case is before me on plaintiff's application for a preliminary injunction.

Denhard, U. S. 1,143,572 (1915), conceived the idea of introducing into a combination for an electric appliance which included means for an electric heater, a thermostatic control to break the circuit closed by the manual operation of a switch. Denhard's patent was illustrated by showing an application of his automatic control to an electric flat-iron but his specifications clearly disclose the applicability of this feature "to various kinds of electrically heated devices." His thermostatic unit consists of the conventional bi-metallic strip which buckles under heat. (This feature is seen in Copeland and Mead, not to mention the defendant's structure.) And in Denhard's invention the bi-metallic strip is controlled by heat coming from a heater-unit in his combination (in this feature Denhard is followed by the defendant, but not by Copeland who controls the thermostatic strip by a coiled wire thereon).

Copeland, 1,844,206 (1932), disclosed an electric cigar-lighter with thermostatic control. Copeland's conception was a "cordless" lighter in that its operation did not involve a plug member connected by electric cord and reel to the circuit when the plug was removed for application to the cigar. But it deviated from the conventional conception of an electric cigar-lighter, in that it had no removable plug. Instead it contemplated that all the necessary parts should be comprised within the socket or holding member, so disposed as to become operable upon the insertion of a cigar or cigarette. Thus in Copeland's conception, the cigar, the inward thrust upon which brings the device into operation, is utilized as the plug member of the conventional device, and Copeland's automatic control is dependent, not upon the heat from the heater unit but rather upon an additional part, viz., the wire coil on the bi-metallic strip.

Plaintiff's patent in suit discloses a cigar-lighter all the parts of which appear to me, at least in this preliminary stage, to have been old, not one of which performs any new function in the combination. It is of the conventional plug and socket, cordless type, with a plug carrying a heater-unit at its inner end which is wholly removable for application to the cigar.

Nevertheless plaintiff contends that the combination involved patentable invention in that into the conventional structure the patentee introduced, as a sub-combination, (a) means to hold the parts locked in closed circuit (when the plug has once been manually pushed into closed circuit position) and (b) thermostatic means to break the circuit as soon as the heater-unit has achieved the desired temperature.

When Denhard had taught how to include automatic thermostatic control in electrical appliances, and Copeland had included an illustration of a type of such a sub-combination in an electric cigar-lighter, I have grave doubt as to Mead's right to be treated as having invented the broad notion of introducing automatic thermostatic control into the combination of a cigar lighter. Indeed, the patent itself makes no such pretensions. It modestly describes its object as being a cigar-lighter "simple and cheap in manufacture and more efficient than the devices used heretofore." The means for thermostatic control are described without claim of novelty, and without emphasis over other elements which appear in countless illustrations of the prior art.

If my doubt has substance, it follows that if Mead's claims are valid over the prior art, they must be construed as restricted to the means which he actually disclosed.

Thus construed, infringement has not been shown of the claims in suit, for Mead shows a combination whereby the plug when in carrying or "off" position is manually rotated into "on" position thus closing the circuit. The accused device, however, is so arranged as to pass from "off" to "on" position by a direct inward thrust of the plug into the socket. This important difference in operation necessarily involves a fundamental difference in the combination. Thus the accused device completely eliminates Mead's rotating socket and his latch pin (75 on the drawings of the patent) with its three-dimensional movements, thus materially contributing to the simplicity of the structure. Other differences it would be superfluous to enumerate.

Since the success of the suit thus depends upon the construction of the claims which to me seems a question substantially doubtful, the application for preliminary injunction is denied.

So ordered.