MUELLER et al. v. WOLFINGER.

Civil Action No. 544.

District Court, S. D. Ohio, W. D.

May 1, 1946.

F. O. Richey and H. F. McNenny, of Richey & Watts, all of Cleveland, Ohio, and Joseph D. Chamberlain, of Dayton, Ohio, for plaintiffs.

Warren H. F. Schmieding, of Columbus, Ohio, and Tom J. E. Walker, of Dayton Ohio, for defendants.

NEVIN, District Judge.

This is a patent suit. Plaintiffs filed their complaint in this Court on October 9, 1945. At that time the only defendant named was Robert F. Wolfinger, d.b.a. Superior Manufacturing Company, at Delaware, Ohio.

On November 28, 1945, Ray H. Peak filed a petition for leave to intervene as joint defendant.

In his petition, Ray H. Peak alleges that he has an interest in this litigation. With and in support of the petition of Ray H. Peak, an affidavit of defendant Robert F. Wolfinger was filed on November 28, 1945.

From these documents, it appears that Ray H. Peak, a resident of Delaware, Ohio, and doing business there as Superior Manufacturing Company, manufactures the devices referred to in the bill of complaint, which devices are sold by defendant Wolfinger, as exclusive Sales Agent under an agreement, a copy of which is attached to defendant Wolfinger's affidavit and marked Exhibit A. It further appears that while Wolfinger and Peak are not partners, it is agreed between them that each is individually entitled "to do business as the Superior Manufacturing Company," Wolfinger "selling Superior Poultry Picking Machines, manufactured by Peak and Peak manufacturing said machines."

By stipulation of the parties filed on December 5, 1945, and with the approval of the Court, the petition of Ray H. Peak was granted and he was made and now is a defendant herein, "nunc pro tunc as of the filing of the Bill of Complaint."

The defendants of record now, therefore, are Robert F. Wolfinger, d.b.a. Superior Manufacturing Company, and Ray H. Peak, d.b.a. Superior Manufacturing Company.

In their complaint, plaintiffs charge defendants with infringement and contributing to the infringement of patent No. 2,300,157, issued October 27, 1942, to George R. Hunt for "feather-picking apparatus for fowls and the like."

On December 4, 1945, defendants filed their answer denying infringement and alleging invalidity of Hunt patent No. 2,300-157 for the reasons set forth in their answer. With their answer defendants also filed a counter claim. On January 25, 1946, plaintiffs filed their reply to this counter claim.

On October 9, 1945, simultaneously with the filing of their bill of complaint, plaintiffs also filed a motion for preliminary injunction. With and in support of that motion they filed two affidavits, together with certain exhibits attached to each of the affidavits respectively. One affidavit is by

Conrad B. Mueller (a plaintiff herein), and the other by H. F. McNenny. The cause is now before the Court on this motion for preliminary injunction.

On October 7, 1943, plaintiffs, in the instant action, filed (as plaintiffs therein) suit in this Court, said suit being Civil Action No. 279 on the docket of this Court. In that action, the defendants were Harold C. Campbell; H. D. Thomas, d.b.a. The Thomas Company, and William E. Ginovan, d.b.a. Ginovan Poultry Market. Defendants in that cause (Civil No. 279) were charged with infringement of Hunt patent No. 2,300,157, and particularly claims 2, 3, 7, 10, 12, 14, 16, 17 and 19 thereof. The patent contains 19 claims.

On June 23, 1945, 68 F.Supp. 464 this Court rendered a decision and thereafter, on July 30, 1945, based upon that decision, a judgment was entered in cause No. 279, adjudging claims 2, 3, 7, 10, 12, 14, 17 and 19 of Hunt patent No. 2,300,157 good and valid in law. (Claim 16 was adjudged invalid.)

It was further adjudged that each of the defendants in that action, H. C. Campbell; H. D. Thomas and William E. Ginovan, respecively, had, by making, selling and using the device complained of in Cause No. 279, infringed each of the claims just referred to in issue and there held to be valid.

A permanent injunction, enjoining the defendants in Civil Action No. 279, from further infringement, was granted. Both plaintiffs and defendants in that action have given notice of an appeal to the United States Circuit Court of Appeals for this (Sixth) Circuit.

In a bill of particulars filed herein on November 26, 1945 (on motion of defendants), plaintiffs assert that on the present motion for preliminary injunction they will rely on the same claims of the Hunt patent heretofore (in Cause No. 279) held valid, to-wit, claims 2, 3, 7, 10, 12, 14, 17 and 19.

Extensive briefs have been filed in support of and contra the motion now under consideration, and on December 11, 1945, counsel for the respective parties argued the motion orally.

Defendants, in the affidavit of defendant Wolfinger and in the briefs of their counsel,

urge that if a motion for preliminary injunction should be granted they "will be damaged irreparably." Plaintiffs, on the other hand, maintain that if the motion is denied they will suffer irreparable loss and damage.

Plaintiffs say (Br.Pp. 26, 27) that the whole of the record, including the affidavits on file, shows the following picture: (That) "Campbell saw the Hunt machine at Marion, Ohio, in 1939, went home, copied it, filed his false affidavit in the Patent Office (See record and Decision in Cause No. 279), made the Ashley machine, then made the Peerless machine for Thomas employing first the construction shown in the Campbell patent held to infringe in the main cause, and then the machine shown in the Campbell and Thomas patent No. 2,-376,120 and illustrated and described in the numerous advertisements of Campbell and Thomas, relied upon by us on the Rules to Show Cause. After selling the machine with the finger having the hollow in the end, as illustrated in Plaintiffs' Exhibit 2 in the Superior cause, Superior shifted over to the machine with the finger illustrated in the Campbell and Thomas patent No. 2,-376,120 and in the advertisements relied upon in the Motion to Show Cause and illustrated in the drawings in the back of our Main Brief on the Motion to Show Cause. Peak made this machine and sold it to Wolfinger, who in turn sold it to Campbell, who in turn sold it to the trade as the 'Peerless' machine illustrated in Plaintiffs' Exhibit 4. Peak, who calls himself Superior, then made the machine with the oval finger illustrated in Plaintiffs' Exhibit 3 in the Superior cause and illustrated in the drawing in the back of our Main Brief on the Motion for a Preliminary Injunction in the Superior cause and of the general construction illustrated in Plaintiffs' Exhibit 6 concerning which Corey testified in the main cause. This machine was sold to Wolfinger who also calls himself Superior, who sold it to the trade. Geographically, all of these parties are located together. As a result of all this it can be seen that all the defendants in both of these causes have been working together and that all have acquired their information originally from Hunt. Whether it can be

technically said that these people are in privity or not is unimportant for, in fact, they are insofar as taking the Hunt invention is concerned. * * * The defendants in the instant cause are linked up with the defendants in the former cause to such an extent that the whole set up might be said to be a conspiracy to appropriate the Hunt invention notwithstanding the former litigation and the decision therein. To permit the infringement to continue would have that effect and will cause serious and irreparable injury to the patentees especially since notoriously the type of people who are practicing these infringements, headed by Campbell, are the type who are too often successful in concealing the profits and gains which they realize from the infringement."

At the oral argument, based on the previous decision and judgment of this Court, the validity of the claims here relied upon was not challenged, and it was agreed by counsel for defendants that the sole question here to be determined is whether or not defendants' finger or fingers are the equivalent of the finger heretofore held by the Court to be an infringement.

The record (Tr. Oral Argument P. 32, et seq.) in these respects shows the following:

"The Court: * * * Now, in this case the Court has already heard a case on the merits involving the Hunt patent and has decided that case and held certain claims to be valid and other claims to be invalid. Now, at this hearing, at this time, I do not understand that that is being challenged. I understand that that decision is taken to be correct at this moment.

"Mr. Schmieding (of counsel for defendants): That is right, your Honor.

"The Court: Then that leaves, it seems to me, in this case just what I said to you a little while ago, nothing for this Court to determine that I can see, except whether or not this finger 3a, assuming that a hollow finger does not mean a finger like 3a, that is, as far as its physical makeup, hollow on the inside, whether that finger nevertheless is in law and in fact the equivalent of the Hunt finger. It seems to me that is all I have to consider in this matter. * * *

"Mr. Schmieding: * * · * There is a change in structure.

"The Court: If there is a change in structure, that is what I have been trying to say all the time. * * * You have given me certain information now that I will go back and examine as to whether or not this particular finger or the fingers challenged here are the equivalent in law and in fact of the finger that this Court held infringed.

"Mr. Schmieding: I think that is the entire question.

"The Court: That is what I think it is."

While agreeing that the issuance of a preliminary injunction is within the sound discretion of the Trial Court, defendants urge that, nevertheless, it is an extraordinary remedy and that one should not issue unless both the validity of the patent and infringement are clear; and further, that where a patent has been held valid and infringed in one suit, a preliminary injunction sought in another on the same patent need not be granted, citing a number of authorities, among others: Set-O-Type Co. v. American Multigraph Co., 6 Cir., 55 F.2d 800; Diamond Power Specialty Corporation v. Bayer Co., 8 Cir., 95 F.2d 541; Outlook Co. v. Presto Cloth Mfg. Co., 6 Cir., 267 F. 193; Schick Dry Shaver Incorporated v. General Shaver Corporation, D.C., 21 F.Supp. 718; Automatic Devices Corporation v. Cumo Engineering Corporation, D.C., 34 F.Supp. 144.

As above indicated, in the instant proceeding, the validity of the patent is not challenged.

■ The rule in this (Sixth) Circuit is that the general principles of equity which control the granting or refusing of preliminary injunctions apply to patent suits. It is not necessary that their validity or infringement be shown beyond a reasonable doubt. City of Grand Rapids et al. v. Warren Brothers Co., 6 Cir., 196 F. 892.

■ It has been held by the Court of Appeals of this Circuit that in a case such as here presented "Injunction should be granted or withheld, according as, upon a balancing of convenience and inconvenience, seems necessary to the protection of

the rights of the parties," Crescent Specialty Co. v. National Fireworks Distributing Co., 6 Cir., 219 F. 130, 132, and that "the court may properly take into consideration the relative injury which will result to the parties, respectively, from granting or refusing it." City of Grand Rapids v. Warren Bros. Co., supra.

It has also been held in this Circuit and District that it is entirely proper and within the discretion of the Trial Court under certain circumstances to require a defendant to post a bond in lieu of a preliminary injunction.

In view of its decision and the judgment entered thereon, in Civil Action 279, in this Court, and of its recent Decision, 68 F.Supp. 475, in a contempt proceeding on rules to show cause in Civil Action No. 279, together with the submitted record and the applicable law in the present case, the Court is of the opinion that the instant case is one which warrants such procedure.

In the City of Grand Rapids case just above referred to, the Court of Appeals (Page 899 of 196 F.) say: "We see no valid reason why a court, in a case like this, when, on the facts before it, it can clearly see that damages in a given sum will necessarily accrue to the complainant, if a temporary injunction be not issued and he be successful on the final hearing, or to a defendant, if he be enjoined, but succeed on the merits, should not require a bond similar to that under consideration, covering stipulated damages. In Acme Acetylene Appliance Co. v. Commercial Acetylene Co., 6 Cir., 192 F. 321, 112 C.C.A. 573, we affirmed an order providing for stipulated damages in the form in which it was issued, C.C., 188 F. 89. That order was similar to the one now under consideration."

Exactly the procedure here proposed was followed in this District by Judge Sage of this Court, in the case of Geo. A. Macbeth Co. v. Lippencott Glass Co., 54 F. 167. That case was before the Court on a motion for preliminary injunction for the infringement of a patent. The validity of the patent had been sustained. Affidavits were filed on the motion before the Court. Judge Sage stated (Page 169 of 54 F.):

"My conclusion is that this is a case for an order requiring the defendants to give bond in the sum of $10,000 to the complainants for the payment of any profits or damages that may be decreed against them; and an order will be made also requiring them to keep an account of their manufactures and sales, to be produced when called for by the court. The motion for a preliminary injunction is overruled, with leave to renew it if the bond above provided for be not furnished within 20 days from the date of the entry."

On the motion for preliminary injunction in the instant case, the Court has come to the same conclusion reached earlier (January 25, 1893) in this Court by Judge Sage in the Macbeth v. Lippencott case, and the Court, therefore, holds and rules that the same procedure (as there) shall be followed here; that is to say, counsel may prepare an Order requiring the respective defendants to respectively give bond in the sum of $—— to plaintiffs herein for the payment of any profits or damages that may be decreed against them respectively. The order shall provide also that the respective defendants are required to keep respectively an accounting of their manufactures and sales, such accounting to be produced when called for by the Court.

The order shall provide further that the motion for a preliminary injunction is overruled, with leave to plaintiffs to renew it if the respective bonds above provided for be not furnished within twenty days from the date of the entry of the order here referred to.

The Court will leave it to counsel for the respective parties herein in the first instance, to agree, if possible, upon the amount of the respective bonds to be furnished by the respective defendants. In the event counsel are unable to agree, they shall submit, within fifteen days from the date of the filing of this decision, in writing, to the Court, what each party respectively deems to be a reasonable amount to be placed in the respective bond to cover the items hereinabove set out, together with their reasons therefor.

Counsel may prepare and submit an order accordingly.