**MARR OIL HEAT MACH. CORPORATION et al. v. HARDINGE BROS., Inc.**

District Court, N. D. Illinois, E. D. June 15, 1927.

No. 4845.

**1. Patents ⟨⟩328—1,158,058, King patent, for oil burner, held valid, and claims 1, 2, 5, and 10 infringed.**

King patent, No. 1,158,058, for oil burner, *held* not anticipated, valid, and claims 1, 2, 5, and 10 infringed.

20 F.(2d)—16

**2. Patents ⟨⟩72(4)—Prior device, though capable of performing function of patent by modification, is not "anticipation," where not designed nor used for it.**

It is not sufficient to constitute anticipation that a prior device might by modification be made to accomplish the function of the patented device, if it was not designed by its maker, nor adopted nor actually used for the performance of such function.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

In Equity. Suit by the Marr Oil Heat Machine Corporation and the Bunting Iron Works against Hardinge Bros., Inc. Decree for complainant.

Emery, Booth, Janney & Varney, of Chicago, Ill. (Thomas H. Sheridan, of Chicago, Ill., and Frank D. Merchant, of Minneapolis, Minn., of counsel), for plaintiffs.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for defendant.

LINDLEY, District Judge. Plaintiffs, owner and licensee, respectively, of patent to King, No. 1,158,058, issued October 26, 1925, charge defendant Hardinge Bros., Inc., with infringement, and pray for an injunction and an accounting. The answer asserts invalidity and noninfringement. Plaintiffs rely upon claims 1, 2, 5, and 10 of King, which are set forth in the margin.[1]

---

[1] 1. In a centrifugal burner, the combination of a casing open at its upper end, an open enlarged cup shaped centrifugal atomizer journaled in the casing, said atomizer having its open end projecting through the upper end of the casing, and means for introducing oil into the lower end of the atomizer.
2. In a centrifugal burner, the combination of a casing open at its upper end, an open outwardly flaring enlarged cup shaped centrifugal atomizer journaled in the casing, said atomizer having its open end projecting through the upper end of the casing and spaced from same, means for introducing oil through the lower end of the atomizer, and means for introducing an air current through the casing between the atomizer and the casing.
5. In a centrifugal burner, the combination of a casing open at its upper end, an oil-delivering hollow standard, centrally disposed and secured within the casing, a sleeve revolubly mounted on said standard, an open cup centrifugal atomizer secured to the sleeve and projecting through the upper end of the casing, said atomizer and casing inclosing an air conduit, means for forcing an air current through the conduit, a collar mounted on the upper end of the casing, said collar in conjunction with the atomizer forming an annular discharge for the air conduit, and means for adjusting the position of the collar to increase or decrease the area of the annular discharge opening.
10. The combination in a centrifugal oil burner, of a casing open at its upper end, a vertically disposed tubular shaft journaled in the

[1] King describes an oil burner, consisting of an open cup centrifugal atomizer fixed upon a hollow driving shaft arranged vertically. The sides of the cup slope slightly outwardly from the bottom to the top and culminate in an outwardly extending flange, which overhangs the casing hereinafter mentioned. Fan blades are attached to the cup and a metal casing surrounds the latter, there being an intervening open space between the two. The upper end of the casing is in the form of a collar, which is adjustable vertically to control the dimensions of the opening between the top of the collar and the cup. The atomizer cup and vertical driving shaft rotate horizontally about the oil feed pipe, and within the casing upon antifriction bearings journaled in the casing. The fan blades upon the cup produce a draft of air, which passes through the space between the atomizer and the casing and is deflected outwardly in a horizontal plane by the overhanging flange of the cup. The oil feed pipe terminates within the bottom of the cup, and the fuel oil flows therefrom over a small umbrella shaped cap, which spreads the oil evenly in its flow into the cup.

King evidently contemplated that when the device should be in operation the fuel oil would be spread out in a thin volume over the inner periphery of the cup because of the centrifugal force resulting from the rotation, and that the same force would cause the oil to flow up the wall of the cup until it reached the top, and there be thrown off over the flange in a finely atomized condition, the draft of air from the casing joining with the atomized oil and becoming mixed therewith at the outer edge of the flange.

King said, concerning the opening just below the point where the air mingles with the oil, that the flame area might be concentrated or spread by adjusting the area of the annular air discharge. A careful reading of his description and claims, keeping in mind the elemental laws governing forces and motion, convinces one that the patentee contemplated that the flame thus controlled by means of the adjustable aperture could be spread into a saucer shape.

case, an open top cup fixed on the shaft constituting a centrifugal atomizer, said cup having an outwardly extending flanged lip overhanging the upper end of the casing and forming therebetween an air outlet, air induction means on the cup for creating an air current through said air outlet, an oil pipe extending through the hollow shaft and discharging into the bottom of the cup, and means for revolving the cup.

The testimony of plaintiffs shows that the King device has been adopted after prolonged and careful experimentation with other burners, including burners somewhat in the character of Becker hereinafter mentioned. Following King's teaching, plaintiff Marr has developed a burner which has great merit, is entirely practicable, and of substantial commercial value. Defendant's testimony also indicates that devices following King's teaching are successful, the defendant, in its experimentation of various devices, having expended something like $415,000, attempting to make a success of other devices.

It becomes material, therefore, to determine whether the prior art negatives invention upon King's part. Defendant cites Cook, No. 73,506, January 21, 1868; Klein, No. 473,759, April 26, 1892; Eddy, No. 540,650, June 11, 1895; Fesler No. 1,064,467, June 10, 1913; Becker, No. 1,101,779, June 30, 1914; and a Naval Fuel Board publication.

Cook, Klein, and Eddy built rotating conical distributors upon horizontal axes. In none of them was there disclosure of the element of King's claim No. 10, described as "the outwardly extending flanged lip of the cup." Cook provided no means for spreading the flame, as did King, and furnished no air casing or other means of controlling or directing a current of air. The testimony demonstrates the inability of his construction to produce in distribution and combustion the results achieved by King, and no element in the form used by Cook is adopted by King.

Klein provided no adjustable casing to control the volume of air or the shape of the flame. He had no casing open at its upper end, no atomizing cup projecting through the upper end of the casing, and no means of introducing oil into the lower end of the atomizer.

Eddy provided a surrounding air casing, through which the cup extended somewhat, but within the inner limits of which the cup was entirely located. His casing was of a character entirely different from that of King, and manifestly was intended to achieve a different result. His device, unless rebuilt, could produce only one kind of flame, and could not cause the flame to spread as King contemplated. His device was not designed, adapted, or intended to obtain the results of King's construction.

Fesler used an open bottom cup-shaped atomizer, with an annular trough around the bottom, into which the oil was fed with a

separate bent oil tube; delivery being at one point in the periphery rather than in the center of the cup, as in King's device. Over this cup Fesler placed a stationary cover, and on the cover placed fan blades, both above and below the flange of the cup. He manifestly was seeking to create considerable upward flow of air from the center of his atomizing cup, in contradistinction to King's method. If Fesler eliminated his covering, he destroyed his air adjustment. He did not accomplish the same result or use the same means as King. The Patent Office allowed King's patent over Fesler's.

The Naval Fuel Oil Board publication cited antedated King's patent. Williams, the author, used a disk of comparatively wide diameter to effect the atomization of the oil, which was delivered upon the disk through a large oil pipe; the diameter of the disk being described as from 14 to 28 times the diameter of the duct. This oil duct was slightly larger than the oil feed pipe, but in neither illustration was it the equivalent of the enlarged open cup of King nor did it perform the same function. Williams' device worked upon principles and made use of elements entirely different from those of King, and apparently was never successfully used. Evidently, in this device, the oil would pass from the restricted duct in a column, and tend to rise above the disk in a manner wholly impracticable and undesirable. King's patent was allowed over the citation of this publication.

Though there is grave doubt as to the relevancy and competency of Becker, the court has considered his patent as relevant evidence of prior invention. Becker discloses a structure which includes some of the elements of King's device, but in his specifications he places this recital: "By providing the protective heavy cast iron shell or housing and refractory cover, it can be seen that the rotating parts are entirely inclosed, thus preventing any of the parts from being injured or thrown out of alignment by careless operators when cleaning the interior of the furnace. The revolving parts thus inclosed are also protected from damage due to warping, and on account of excessive heat. There is no possibility of any liquid fuel accumulating in such a position that it can carbonize by radiation of heat from the hot fire box, causing the motor to burn out when the apparatus is started." This cover, therefore, was an essential part of his invention, and performed certain functions.

Defendant contends that, inasmuch as the mere omission led only to the mere loss of the functions performed by the omitted element, it was not invention upon King's part to omit the top. The assumption this court does not believe is warranted. The alleged functions of Becker's cover have not been lost in King by the omission. King, as well as Becker, protects his cup from the excessive heat; but, while Becker did so by a cover, King throws away the cover and accomplishes the result by the film of oil upon the inner surface of the cup. Furthermore, King has retained the other alleged function of Becker's cover in that in his device, as in Becker's, there is no possibility of any liquid fuel accumulating in such a position that it can carbonize by radiation of heat from the hot fire box when the burner is stopped, with disastrous results of causing the apparatus to burn out when the burner is again started.

Upon testimony of witnesses for both plaintiffs and defendant, Becker's device would not work. It grew hot, warped, caused back-firing, and was not capable of easy cleaning. The functions claimed were desirable, and the problem was to retain those functions, and at the same time avoid the disadvantageous results of the cover. This King did. He made an open cup, which retained the functions of the covered cup, by keeping the inner surface cool with the filming oil and the air on the under side of the cup. He accomplished the additional result of preheating the oil at the time it was being thrown into the flame and was being atomized. Furthermore, Becker did not have the pronounced outward extension of the cup at its upper edge. He could not spread his flame in the manner described by King. Becker threw his air current across the oil at right angles. King threw the air and oil into practically parallel columns making one horizontal current.

Becker does not disclose the open enlarged cup-shaped centrifugal atomizer of King's claims 1, 2, 5, and 10, the air current of claim 2, the adjustable collar controlling the air current of claim 5, or the outwardly extending flanged lip overhanging the upper end of the casing, forming an air outlet of claim 10. The applications of King and Becker were before the same Examiner, and no interference was declared. Defendant admits it failed to get satisfactory results out of any structure using the principles named in the Becker patent. King used fewer elements than Becker, and he accomplished results that none of the prior arts accomplished. His device permitted the fuel oil to be preheated to a desirable extent; it permitted the circulation of the gases in the

fire box into the interior of the cup, and rendered cleaning of the atomizer a simple and easy matter; it provided means for spreading the flame so that it might become a saucer-like flame; it furnished an adjustable means for the control of the air current in order that the proper amount of air might easily be obtained; it achieved a successful combustion with simplicity of operation, and met with success.

The combined teachings of the prior art did not teach the reader the ability to make King's invention. He was not exercising mere mechanical skill; he was inventing a practicable, efficient, commercially successful device, which accomplished functions which the prior art did not disclose, and avoided the disadvantages which the devices of the prior art suffered.

Claim 1 is the weakest, but the court is of the opinion that all of the claims are valid and not anticipated. The language of Enterprise Mfg. Co. v. Sargent (C. C.) 28 F. 185, following is applicable: "In this case the machine is a simple one, but it is manifest that the inventor accomplished a new and beneficial result by means which other people had been near to, and apparently wanted to find, but failed to see. The skill of his predecessors did not produce the idea which was to make an efficient implement. Baker produced it, and is entitled to be styled an inventor." Also, to the same effect, United Shirt & Collar Co. v. Beattie (C. C. A.) 149 F. 736; Brown v. Huntington Piano Company (C. C. A.) 134 F. 735; Stevens Arms Co. v. Davenport et al. (C. C. A.) 134 F. 869.

[2] The defendant presented evidence tending to show that with certain modifications devices of the prior art might perform the same function and achieve the same results as King. From what has been said it will be apparent that the court is of the opinion that these modified structures constructed after the success of King's invention do not negative patentability. The facts bring the case within those cases where the courts have refused to invalidate meritorious patents that have gone into successful use, upon the unsuccessful disclosure of prior patents modified to meet the functions of the patent attacked. In Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658, the court said: "While it is possible that the Stringfellow and Surles patent might, by a slight modification, be made to perform the function of equalizing the springs which it was the object of the Augur patent to secure, that was evidently not in the mind of the patentees, and the patent is inoperative for that purpose. Their device evidently approached very near the idea of an equalizer; but this idea did not apparently dawn upon them, nor was there anything in their patent which would have suggested it to a mechanic of ordinary intelligence, unless he were examining it for that purpose. It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions." See, also, Keystone Mfg. Co. v. Adams, 151 U. S. 139, 14 S. Ct. 295, 38 L. Ed. 103; Gray Telephone Co. v. Baird Co. (C. C. A.) 174 F. 417.

The issue of infringement is more easily disposed of. Defendant's structure includes a centrifugal atomizer, into which the oil is delivered at the bottom, and which is provided with a rounded upper portion. The oil spreads over the inner surface of the atomizer in a thin flame, and is discharged in a fine spray over the outer lip. This is the exact operation achieved by King, and the cup is not essentially different from his. It is of smaller diameter in the smaller sizes, and defendant contends that the smaller diameter prevents the preheating claimed by King; yet defendant's salesman sold its device upon the representation that the preheating would be obtained. Furthermore, plaintiff's testimony is to the effect that defendant's device provides such preheating. Then, too, the diameter of the cup is not in King's patent limited to any designated ratio, and, though it be true that defendant makes some of its cups of smaller diameter than that of King, it is evident that the cups in the two devices perform the same function, so far as receiving the heat rays of the fire box is concerned, the only difference, if any, being one of degree.

Defendant locates its fan blades near the upper end of the cup, while King places his fan near the bottom. But King's claims are not limited to the latter location of the fan, and there is no distinction in principle in the respective locations, or in the results achieved by the different locations of the fan blades. Defendant has added another means of inducing air in an air supply from below into the center of the atomizing cup, and claims this precludes preheating and circulation of the gases in the interior of the cup.

The testimony shows that the defendant has in the past claimed that the purpose in conveying the air around the oil spindle was to prevent dripping or leaking of the fuel oil down the spindle. The court is of the opinion that, in view of the fact that the air must pass through the oil, and that the movement is entirely dependent upon the natural draft of the furnace, acting through the long constricted passage in the sleeve, the flow of the air to the interior of the cup, and the result thereof is not of any appreciable effect upon the combustion.

King's adjustable collar has not been adopted in its entirety by defendant, but the arrangement of defendant is a mechanical equivalent thereof. Indeed, defendant may have improved upon King's collar, but the latter certainly taught defendant all it needed to know to achieve the results it has achieved in its own constructions. Defendant has retained the fundamental disclosure of the King patent. It utilizes the same gear casing, but constructs it as a separate part. King's casing is integral with the underlying gear box, and he supports it upon legs or pedestals extending to the platform or base. But in the patent and defendant's structure the bearings furnishing the journaling for the atomizer shaft are located in practically the same places; that is, at the top and bottom of the gear casing. The two are equivalent in this respect.

Defendant's device includes the open, enlarged, cup-shaped, centrifugal atomizer journaled in the casing. On each of the defendant's claims relied upon the term "open enlarged" applies to what it seems obvious to the court is the structure of defendant as well as that of King. Defendant's cup is an "outward flaring" cup, such as King claims in his claim 2. The extending flange may be less in some of defendant's models, but again the difference is one of degree only. Defendant also includes "the means for inducing an air current through the casing, and between the atomizer and the casing," claimed by King in claim 2, and the equivalent of the collar mounted upon the upper end of the casing of claim 5. The element of the outwardly extending flange or lip overhanging the upper end of the casing in King's claim 10 is found in all its essentials in defendant's structure.

The court is of the opinion that the defendant is infringing all of the claims relied upon. There will be a decree for injunction, as prayed, and a reference to a master for an accounting.