**HUNT et al. v. ARMOUR & CO.**
No. 48 C 842.

United States District Court
N. D. Illinois, E. D.

March 14, 1950.

Richey & Watts, by H. F. McNenny and Frederic B. Schramm, all of Cleveland, Ohio, and Davis, Lindsey, Hibben & Noyes, by George N. Hibben, Chicago, Ill., for plaintiffs Anna May Hunt and Greenbrier Co.

Bair & Freeman, by Will Freeman and Norman Lettvin, all of Chicago, Ill., for plaintiff Barker Poultry Equipment Co.

Dawson, Ooms, Booth & Spangenberg, by Casper W. Ooms, George E. Frost and Owen J. Ooms, all of Chicago, Ill., for defendant Armour and Co.

SHAW, District Judge.

George R. Hunt, now deceased, received patent No. 2,300,157 on Feather-Picking Apparatus, which was issued to him on October 27, 1942 and which is now in suit. His widow, Anna May Hunt, Administratrix of his estate, and Greenbrier Company, the exclusive licensee of the Hunt patent,

are the original plaintiffs herein, Barker Poultry Equipment Co. being later joined as co-plaintiff upon motion of defendant.

It is of record and admitted that the ownership of said patent is as above stated. Because the joining of Barker Poultry Equipment Co. raised issues not directly relevant to those raised by the complaint and answer, it was ordered that the main issues of infringement and validity be tried and that all other issues be separated therefrom, the court retaining jurisdiction for that purpose.

Defendant Armour and Company is charged with the infringement of claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent by reason of its use of various machines made by Johnson and Albright.

Defendant interposes the usual defenses of invalidity and noninfringement, and the additional defense of misuse of the patent.

It should be noted at the outset that the validity of this patent and the claims above-mentioned has been sustained by the Court of Appeals for the Sixth Circuit, Campbell et al. v. Mueller, et al., and Mueller et al. v. Campbell et al., 159 F.2d 803, and Wolfinger v. Mueller et al., 165 F.2d 844; by the District Court for the Southern District of Ohio, Western Division, Mueller et al. v. Wolfinger, 68 F.Supp. 485; and by the District Court for the Northern District of Iowa, Cedar Rapids Division, Mueller et al. v. Pickwick Corporation, et al.[1]

It is strongly urged upon me that I should disregard those decisions because they are not from my own circuit and because the District Court decisions are not binding upon me. I cannot agree with this view. It is my opinion that until the Court of Appeals for the Seventh Circuit disagrees therewith I am bound by the opinion of the Court of Appeals for the Sixth Circuit, and that although the district court cases may not be binding upon me they are at least persuasive, and I am strongly inclined to agree with their reasoning. If there is to be a difference between the courts of appeals of the differ-

ent circuits I think it more appropriate that that situation should be created by the Court of Appeals than by me as a district judge.

On the question of validity the defendant, as is usual in such cases, depends largely on the prior art and has gone to considerable trouble and expense trying to apply what they call the prior art to the case at bar. I have resolved that point by determining and holding that there is no prior art applicable to this case. It is my holding, and the record shows conclusively, that until the Hunt patent and the disclosures made by Hunt there was never any machine built that successfully picked chickens mechanically. Such prior art as has been disclosed consists entirely of "paper" patents, none of which has ever been built or operated in accordance with the disclosures of those patents. The only one of them which is even worthy of description is the Bouda patent, No. 1,372,595, filed October 4, 1920. The drawings and description of this theoretical chicken-picking machine disclose that it was the intention of the inventor that the feathers should be plucked by means of rollers arranged somewhat in the fashion of a corn-husking machine or an oldfashioned corn shredder, and that the remaining feathers should be wiped off by rubber paddles. It is apparent from the drawings and gear ratios that if the machine were operated at such a speed as to give any effect to the rubber paddles the rollers would be turning at such a speed that no feather could even be touched, and it is admitted that no such machine was ever built.

However, subsequent to the commencement of this suit defendant constructed at its Kansas City plant an experimental machine which entirely omitted the feather-picking rollers and embodied only the rubber paddles which Bouda had described as being useful for wiping purposes only. This machine was attempted to be demonstrated at Kansas City, and motion pictures were taken of the so-called demonstration, but it was in no way successful. Out of ten birds that were attempted to be

I. No opinion for publication.

picked one had its head pulled off, another had a leg bruised so as to render it unmarketable, and some others were bruised so as to destroy or depreciate their commercial value. Even so, as above noted, this experimental machine was in no sense a reproduction of the disclosures made by Bouda. It should be noted that the partial Bouda machine was built for the purposes of this litigation, and motion pictures of its operation were shown to the trial court and are available for view by the Court of Appeals.

■ The other paper patents referred to were Richards, No. 1,755,665; Griggs, No. 920,566; and Swanson, No. 1,889,228. None of these is close enough to the patent in suit to require minute description or extended discussion. Each and everyone of them, including Bouda, was merely an inventor's dream. None of them was ever built and none of them ever picked a chicken. It is enough to say that Defendant's Exhibits 34 and 35 omit the rollers which were Bouda's means of plucking; Defendant's Exhibit 36, supposed to illustrate the Richards patent, was not built in accordance with the Richards specification. It follows that the defense of prior art must fail and be disregarded. Marr Oil Heat Mach. Corp. et al. v. Hardinge Bros. Inc., D.C., 20 F.2d 241.

■ It is my holding that the patent is valid as to all of the claims in suit; and, furthermore, that it is a pioneer patent, basic in nature, and constituted novel invention in a new field which had never before been successfully entered by any mechanical device.

The claims are divided into two groups; i. e., the machine claims, being Nos. 2, 3, 7, 10 and 17, and the finger claims, being Nos. 12, 14 and 19.

The machine claims are as follows:

"Claim 2. A feather plucking device comprising a rotatable member having secured thereto means projecting from the outer surface thereof, said means being substantially cylindrical in shape, of elastic material, and having projections on the surface thereof, a portion of said means adjacent one end thereof being hollow.

"Claim 3. A feather plucking device comprising a rotatable member having secured thereto means projecting from the outer surface thereof, said means being substantially cylindrical in shape, of elastic material, and having projections on the surface thereof, a portion of said means having a thin wall and the remainder thereof having thicker wall portions.

"Claim 7. Apparatus for removing feathers from fowls comprising a rotatable member and a plurality of spaced flexible fingers extending outwardly from said member, each finger being provided with a plurality of relatively closely spaced projections arranged so that upon bending of each finger such projections successively engage the feathers of a fowl pressed thereagainst, each finger being annular in cross-section and having said projections arranged completely therearound.

"Claim 10. Apparatus for removing feathers from fowls comprising an annular rotatable member and a plurality of spaced transverse rows of flexible fingers extending outwardly from said member, a plurality of said fingers being in each row, each finger being provided with a plurality of spaced projections arranged on the side thereof so that upon bending of each finger such projections successively engage the feathers of a fowl pressed thereagainst, each finger being provided with a longitudinal bore extending at least partially inwardly from the outer end of the finger.

"Claim 17. A poultry plucking machine comprising a rotatable drum and a plurality of flexible studs projecting outwardly from the drum, each stud having a plurality of projections on the face thereof, the outer end of each stud being recessed to provide edges thereon in spaced relation in the plane of the edges."

The finger claims are as follows:

"Claim 12. A poultry plucking finger member of the character described comprising a substantially cylindrical body formed of elastic material and having projections on the outer surface thereof, a portion of said body throughout its length being hollow, the walls of the body being sufficiently thick to avoid collapse in a di-

rection parallel to the longitudinal axis when the finger is in use.

"Claim 14. A poultry plucking finger member of the character described comprising a substantially cylindrical body formed of elastic material and having projections on the outer surface thereof, a portion of said body having a thin wall and the remainder thereof having thicker wall portions, the walls of the body being suficiently thick to avoid collapse in a direction parallel to the longitudinal axis when the finger is in use.

"Claim 19. A plucking finger for a rotary drum of a plucking machine comprising a member greater in length than width with a plurality of projections on the outer surface of the portion of greater length, the outer surface of the free and thereof being recessed to provide space surfaces."

■■ The court takes notice that claims 3, 14, 17 and 19 of the Hunt patent do not recite the hollow features found in some of the other claims. On this point, however, the defendant contends that plaintiff is barred by a file wrapper estoppel and is therefore limited to a hollow finger. Plaintiff denies any such estoppel, and contends that even if any such rule could be applied the defendant would nevertheless infringe by reason of the doctrine of equivalents. The file wrapper estoppel does not apply to this case for various reasons, particularly because every amendment that was made in the Patent Office was made without prejudice; and even if that doctrine were to be rigorously applied there would still remain claims 3, 14, 17 and 19 of the Hunt patent which do not recite the hollow feature. In Kennedy et al. v. Trimble Nursey-Land Furniture Co., 2 Cir., 99 F.2d 786, 788, the court said: "Where a patent contains both a broad and a narrow claim and the suit is brought on the broad claim, the court will not read into the broad claim a limitation not therein expressed but which is expressed in the narrow claim; to do so would be changing the contract between the public and the patentee. Electric Machinery Mfg. Co. v. General Electric Co., 2 Cir., 88 F.2d 11, 16; O'Rourke Engineering Construction Company v. McMullen, 2 Cir., 160 F. 933."

The court finds from the file wrapper that there was no abandonment by Hunt of any portion of his invention which would perform substantially the same thing in substantially the same way and with substantially the same results.

■ The rule seems to run through the cases that if a patent discloses something new and entirely different which constitutes a distinct advance in the art the inventor is entitled to a very liberal construction of his claims. If the claims be susceptible of two constructions that construction shall be given to it which will secure to the patentee his actual invention, rather than to adopt a construction fatal to the grant. This is the substance of the holding of the United States Supreme Court in Smith v. Snow, 294 U.S. 1, at page 14, 55 S.Ct. 279, at page 284, 79 L.Ed. 721, decided in 1935. An exact quotation from that case, which has never been departed from, is as follows: "It is plain from what has been said that the character of the patent and its commercial and practical success are such as to entitle the inventor to broad claims and to a liberal construction of those which he has made. Morley Sewing Machine Co. v. Lancaster, 129 U.S. 263, 273-277, 9 S.Ct. 299, 32 L.Ed. 715; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 63, 43 S.Ct. 322, 67 L.Ed. 523; Winans v. Denmead, supra, 15 How. 341, 14 L.Ed. 717. In such circumstances, if the claim were fairly susceptible of two constructions, that should be adopted which will secure to the patentee his actual invention, rather than to adopt a construction fatal to the grant. Keystone Manufacturing Co. v. Adams, 151 U.S. 139, 144, 145, 14 S.Ct. 295, 38 L.Ed. 103; McClain v. Ortmayer, 141 U.S. 419, 425, 12 S.Ct. 76, 35 L.Ed. 800. Respondents do not avoid infringement of the method by varying the details of the apparatus by which they make use of it. Cochrane v. Deener, 94 U.S. 780, 788, 24 L.Ed. 139; Tilghman v. Proctor, 102 U.S. 707, 730, 731, 26 L.Ed. 279."

This view has been expressed by the Court of Appeals for this circuit to the same effect but in slightly different language in Chicago Patent Corp. v. Genco

Inc., 7 Cir., 124 F.2d 725, 728. The Court of Appeals, speaking by Mr. Justice Lindley, said: "Apparently Bellak was the first to invent a free game pin-ball machine and while what he teaches is not strictly of pioneer character in all respects, he was a pioneer in that he first invented this unique feature. It would well seem to follow in interpreting this element that he * * * first brought into the art. To this extent the rules of construction in pioneer patents are applicable and the claims, so far as a new contribution is made, are not to be narrowly or literally construed. Especially is this true when commercial success has followed, as it has here, the introduction of the new device into the field."

Many other cases are cited in the briefs to the same effect, but to quote from all of them would unduly prolong this opinion.

It must be borne in mind that the case now under consideration is stronger on its facts than any of those cited, because in each of them the patent merely amounted to an advance over the prior art while in the present case there was no prior art; the invention is entirely new and basic in all of its details and methods. Clearly its specifications and claims should be interpreted in such a way as to secure to the patentee the benefit of his pioneer invention and not to deprive him of it or any part of it.

Neither can this result be avoided, as defendant seeks to avoid it, by the adoption of mechanical equivalents. The claims with the exhibits in the case would seem to show wide differences in the various types of the fingers used to pluck feathers. Yet each and every one of them is a mechanical equivalent of the fingers and each of the fingers claimed by Hunt and first successfully used by him. There are some variations in size and shape, but they perform the same function and obtain the same result in exactly the same way as the Hunt machine. Regardless of the size or shape, they are mechanical equivalents of the disclosures made by Hunt and by him first reduced to practical application.

■ On this point the Supreme Court of the United States, in Union Paper-Bag Machine Company v. Murphy, 97 U.S. 120, at page 125, 24 L.Ed. 935, had this to say: "Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way to obtain the same result, always bearing in mind that devices in a patented machine are different in the sense of the patent law when they perform different functions or in a different way, or produce a substantially different result."

The Court of Appeals for this circuit, in Nordberg Manufacturing Company v. Woolery Machine Co., 7 Cir., 79 F.2d 685, followed and cited the Murphy case.

■ The authorities seem to concur in holding that in patent law the substantial equivalent of a thing is the same as the thing itself, so that if two devices do the same work in substantially the same way and accomplish substantially the same results, they are the same even though they differ in name, form or shape. Curtis On Patents, 4th Ed., Sec. 310; Winans v. Denmead, 15 How. 329, 330, 14 L.Ed. 717; and Ives v. Hamilton, 92 U.S. 426, 23 L.Ed. 494.

■ The court finds that the Albright machines and fingers infringe claims 2, 7, 10, 12, 17 and 19 of the Hunt patent. The court further finds that the Johnson automatic machines and fingers infringe claims 2, 10 and 12 of the Hunt patent; that the Johnson old manual machine infringes claims 3, 10, 14, 17 and 19 of the Hunt patent; and that the Johnson new manual machine and finger infringe claims 10, 17 and 19 of the Hunt patent.

■ This leaves only to be considered defendant's contention that the Hunt patent has become invalidated or unenforci-

ble by reason of misuse thereof. On this branch of the case defendant contends that notwithstanding any question of validity or infringement the plaintiffs must be denied any relief in this court of equity because, it is claimed, the plaintiffs are using the Hunt patent to dominate the sale of unpatented poultry machine components. They say (1) that the plaintiffs attempt to continue control over the patented fingers after the patent is exhausted in respect to a sale of them, and (2) that the plaintiffs attempt to expand their patent monopoly to secure an illegal monopoly or control on the patented rotary members and other parts for poultry picking machines by refusal to permit the use of patented fingers purchased from the plaintiffs' licensee.

Briefly stated, and put entirely in a different way, this amounts to a contention on the part of the defendant that the plaintiffs are required to participate in an infringement of their combination claims. If they must sell their patented fingers for the purpose of constructing a machine which would infringe their combination claims on the entire device, it would, in substance, destroy those claims and they might as well not have any patent at all on the complete device in this combined form. Such a strained construction can hardly be required from the court in view of the validity of the machine claims, nor can it be drawn from any of the cases which have been cited. Defendant relies most strongly on United States v. Univis Lens Co. Inc., et al., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408, but the case is clearly distinguishable and requires no extended discussion. The case of Radio Corporation of America et al. v. Andrea, et al., 2 Cir., 90 F.2d 612, is more nearly in point and applicable to the present state of facts.

The case of Duncan v. Stockham, decided by the Court of Appeals for this Circuit in 1912, and recorded in 204 F. 781, 789, comes closer to the present case than any other that has been submitted. In that case the Court of Appeals for this Circuit said: "The claim in suit does not name all the various means shown in the specifications and drawings for connection of the means or elements named therein to make them operative in the combination; but we believe the claim is, nevertheless, sufficient for enforcement, on reference to the specifications. It is to be interpreted to include such connections and relations of the several means of the combination which are named, as implied therewith to make them operative, in conformity with the specifications."

 In my view a court of equity cannot lend itself to a theory which would defeat equity. A plaintiff cannot be required to contribute to an infringement of his own patent, because this would not be equitable nor just. As above indicated, this is a pioneer patent in a new field and teaches practically everything that has ever been learned or known about mechanical poultry picking; and, as above indicated, the claims herein named and numbered are valid and are infringed as herein set forth. As to all of these matters findings and judgment will be for the plaintiffs and against the defendant, with costs to the plaintiffs and against the defendant. As to the remaining issues hereinabove indicated the court retains jurisdiction for their final disposal.