**MUELLER et al. v. WOLFINGER et al.**

**Civ. No. 544.**

United States District Court
S. D. Ohio, W. D.

June 7, 1950.

F. O. Richey, H. F. McNenny, Cleveland, Ohio, Joseph D. Chamberlain, Dayton, Ohio, Richey & Watts, Cleveland, Ohio, of counsel, for plaintiffs.

Warren H. F. Schmieding, Jerome R. Cox, Columbus, Ohio, Schmieding, Hittson & Gerber, Columbus, Ohio, of counsel, for defendants.

NEVIN, Chief Judge.

This is a suit for alleged infringement of letters patent No. 2,300,157, issued to George R. Hunt on October 27, 1942, pursuant to an application filed November 16, 1939. The patent is for "Feather-Picking Apparatus for Fowls and the Like". Plaintiffs filed their complaint on October 9, 1945. At the time of the filing of the suit, patentee George R. Hunt then residing at Akron, Ohio, was the owner of the legal title of the patent in suit and plaintiff, Conrad B. Mueller, was the owner of the equitable title of the patent by virtue

of an exclusive license agreement dated February 14, 1940.

In August, 1948, patentee Hunt died, being at that time still the legal owner of the patent in suit. Subsequent to his death, his wife, Anna May Hunt, was appointed administratrix of his estate and thereafter, on January 5, 1949, by agreement of the parties, she was, as Administratrix of the Estate of George R. Hunt, Deceased, substituted as plaintiff herein for George R. Hunt. As such Administratrix, she is the owner of the legal title of the patent in suit.

Plaintiff Greenbrier Company, an Ohio corporation of Cleveland, Ohio, is the assignee of the entire right, title and interest of plaintiff, Conrad B. Mueller, in and to the exclusive license agreement above referred to, and in and to the equitable title of the patent in suit. By a Consent Order entered March 4, 1948, Greenbrier Company was added as a party plaintiff and counter-defendant herein, it being further provided that "this cause shall proceed in the name of Conrad B. Mueller, George R. Hunt and the Greenbrier Company, plaintiffs and counter-defendants, v. Robert F. Wolfinger, doing business as Superior Manufacturing Company and Ray H. Peak, doing business as Superior Manufacturing Company, defendants and counter-claimants".

Plaintiffs pray for an injunction "against further infringement; * * * an accounting for profits and damages; an increase of such damages as provided by law" and for costs.

Defendant Robert F. Wolfinger, a resident of Delaware, Ohio, has, at least during part of the time since October 9, 1945, been engaged in business there as the Superior Manufacturing Company, manufacturing and selling poultry-picking machines.

On November 28, 1945, Ray H. Peak filed a petition herein "for leave to intervene as joint defendant". The parties having stipulated that his petition should, with the consent of the Court, be granted, on December 5, 1945, it was granted and he was made a joint defendant herein. Defendant Ray H. Peak is a resident of Ashley,

Ohio. For at least part of the time since October 9, 1945, he too has been doing business in the City of Delaware, Ohio, as the Superior Manufacturing Company, manufacturing poultry-picking machines, and selling them to defendant Robert F. Wolfinger and others.

On December 4, 1945, defendants filed an answer and counterclaim. In their answer defendants challenge the validity of the patent in suit and deny infringement.

In their counterclaim defendants allege that plaintiffs "have entered into a contract, combination or conspiracy with other persons in violation of the U.S.Code, Title 15, Sec. 1 [15 U.S.C.A. § 1]; and have attempted to monopolize * * * the trade and commerce among the several States in chicken-pickers, in violation of United States Code, Title 15, Sec. 2 [15 U.S.C.A. § 2]" and that because of this alleged illegal conspiracy and attempt to monopolize "Letters Patent No. 2,300,157 is invalid".

Defendants pray that the Bill of Complaint be dismissed; for an accounting and treble damages and for costs.

On January 25, 1946, plaintiffs filed their reply to defendants' counterclaim denying the allegations thereof and praying for its dismissal.

Simultaneously, with the filing of their complaint, plaintiffs moved for a Preliminary Injunction. Subsequently the cause came on for hearing on that motion. On May 1, 1946, this Court filed its Decision. Mueller v. Wolfinger, D.C., 68 F.Supp. 485. Thereafter, other motions were filed by the respective parties and certain orders entered.

On July 19, 1946, this Court entered an order granting plaintiffs a Preliminary Injunction upon certain conditions by them to be performed.

On July 31, 1946, defendants filed a motion for modification of the foregoing order and on September 3, 1946, this Court filed a "Memorandum" regarding it.

On September 27, 1946, defendants appealed to the United States Circuit Court of Appeals for the Sixth Circuit. The Court of Appeals dismissed the appeal on February 2, 1948, for "Lack of Jurisdic-

tion". Wolfinger v. Mueller, 6 Cir., 165 F. 2d 844, 848.

Subsequent proceedings herein resulting ultimately in the trial upon the record on which this Decision is based are in a sense, at least, but a continuation in this action which was commenced when plaintiffs filed their complaint on October 9, 1945.

## I. Validity

The patent in suit contains 19 claims. Of these, Claims 2, 3, 7, 10, 12, 14, 17 and 19 only are here in issue[1]. These claims are divided as follows: Claims 2, 3, 7, 10 and 17 are Machine Claims, and Claims 12, 14, and 19 are Finger Claims.

Defendants in their answer assert Invalidity upon several grounds, among others, (1) That "the interpretation which plaintiffs herein are attempting to place on the claims of said patent and on each of said claims, make said claims indefinite and ambiguous" and that therefore, they do not "meet the requirements of Revised Statute 4888 [35 U.S.C.A. § 33]". (2) That "the apparatus and method described and claimed in said patent involve only the exercise of the ordinary skill of a person familiar with the art" and (3) because of certain prior art patents, publications and public use more than two years before the filing of the application by patentee Hunt.

Defendants assert also that "Claims 2, 3, 7, 10 and 17 here in issue, are invalid because they are drawn to an aggregation of elements that are old in the art of chicken pickers", and that "the patent in suit is invalid because of misuse thereof by the plaintiffs for any one of the following reasons: (a) The charge of infringement of a machine embodying elements other than those defined by the patented claims. (b) The charge of infringement of a machine which uses what is taught in the prior art particularly when the charge includes infringement of a machine wherein the only new element in the patent was purchased from a licensee of plaintiffs. (c) The failure to withdraw a disclaimed claim (here Claim 16 of the patent in suit) from a suit

within a reasonable time after disclaimer. (d) The charge of infringement of claims which the plaintiffs, through their attorneys, know were limited by file wrapper estoppel and knew the same were not infringed". Defendants urge, too, that plaintiffs come into this Court with "unclean hands". (Rec. p. 30.)

In addition to the earlier proceeding, already referred to, in the instant case, the patent in suit, and the claims thereof here in issue have been the subject of protracted litigation both in this and other Federal courts. Each and all of the claims here in issue were held valid by this Court in Mueller v. Campbell, D.C., 68 F.Supp. 464 (June 23, 1945). That holding was affirmed by the Court of Appeals for the Sixth Circuit, 159 F.2d 803 (Feb. 3, 1947).

Each and all of the claims here in issue were (September 5, 1947) held valid by the District Court for the Northern District of Iowa. · Mueller v. Pickwick Corporation, 74 U.S.P.Q. 290.

They were each and all again held valid (March 14, 1950) by the District Court for the Northern District of Illinois, Eastern Division, in Hunt v. Armour & Co., D.C., 90 F.Supp. 767.

Irrespective of the rulings already made by this and other courts, including the Court of Appeals of this Circuit, holding valid the claims here in issue, defendants again challenge their validity in this action. As to this, the record (p. 6 et seq.) shows:

"The Court: You are also claiming, as I understand it, on behalf of the defendants that these claims are all invalid, irrespective of the previous holding?

"Mr. Schmieding: (of Counsel for Defendants) That is right. * * *

"The Court: When is the validity of a patent ever settled, or is it ever settled? * * * When does it ever end?

"Mr. Schmieding: I don't think it ever ends, your Honor, that is, particularly if you have a new ground for the invalidity of the patent.

1. These claims are all set forth in full in Hunt v. Armour & Co., D.C., 90 F. Supp. 767, where they may be read by anyone interested. It is deemed unnecessary, therefore, to repeat them here.

"Mr. Cox: (of Counsel for Defendants) If your Honor, please, first, as to those grounds or rulings this Court has made on validity, we do not expect to make any attack. As to new grounds and new evidence showing the invalidity we do hope to convince your Honor. * * *

"Mr. Schmieding: We have another point on that, your Honor. We do want to have our record sufficiently complete to have a ruling in this present hearing as to equivalency and the doctrine of file wrapper estoppel.

"The Court: All right".

Nothing new has been developed or added in the latest hearing resulting in the present record to warrant or justify the Court in changing its views as heretofore expressed, and as affirmed by the Court of Appeals.

A number of alleged prior art patents are listed by defendants in their answer and in an amendment thereto, filed July 20, 1946. Of those so listed, twelve were offered in evidence in the form of a "Book of Prior Art Patents". The "book" is Exhibit H and the individual patents, Exhibits H–1 to H–12, inclusive. Further reference to these prior art patents will be made by the Court in its Findings of Fact and Conclusions of Law hereinafter set forth and made an integral part of this Decision. For present purposes, it is sufficient to say that there is no anticipation by any of them of the claims here in issue of the patent in suit.

Bearing on this question, this Court adopts as its own, and as a part of this Decision, the language of the District Court of Illinois in Hunt v. Armour & Co., supra, where, 90 F.Supp. at page 769, it is stated: "On the question of validity the defendant, as is usual in such cases, depends largely on the prior art and has gone to considerable trouble and expense trying to apply what they call the prior art to the case at bar. I have resolved that point by determining and holding that there is no prior art applicable to this case. It is my holding, and the record shows conclusively, that until the Hunt patent and the disclosures made by Hunt there was never any machine built that successfully picked chickens mechanically. Such prior art as has been disclosed consists entirely of 'paper' patents, none of which has ever been built or operated in accordance with the disclosures of those patents. * * * It is my holding that the patent is valid as to all of the claims in suit; and, furthermore, that it is a pioneer patent, basic in nature, and constituted novel invention in a new field which had never before been successfully entered by any mechanical device".

The issue of "misuse of the patent" was also before the court and there decided in the Armour case. 90 F.Supp. on page 772, the Court states: "This leaves only to be considered defendant's contention that the Hunt patent has become invalidated or unenforcible by reason of misuse thereof", and the court held for the reasons stated in its decision there had been no misuse of the patent.

At the trial of the instant case "misuse" was urged upon the same grounds as in the Armour case. At the time (January, 1949) the present trial was started, the Armour case had not been decided. The reasons assigned by the Court for its ruling in the Armour case on the question of "misuse" are applicable here. The Court considers it a work of supererogation to repeat them. The patent in suit is not invalid by reason of its alleged "misuse" by plaintiffs. This was also the Finding and ruling of the Court in Mueller v. Pickwick Corp., supra.

Nor is the patent in suit invalid because of so-called misuse by the alleged failure of plaintiffs to withdraw Claim 16 from suit within a reasonable time after the disclaimer. The record shows that as a matter of fact it was withdrawn and as stated (Rec. p. 5) "not in issue".

The claims here in issue are not indefinite or ambiguous. They fully meet all the requirements of the statute. This, too, was the Finding and ruling in the Pickwick case.

The Court is of the opinion and so finds that Claims 2, 3, 7, 10, 12, 14, 17 and 19 here in issue of the patent in suit and each and all of them, are valid and that no new grounds showing their invalidity has been presented by defendants herein.

## II. Infringement

As hereinbefore set forth defendants stated at the trial (Rec. p. 26) that we "want to have our record sufficiently complete to have a ruling in this present hearing as to equivalency and the doctrine of file wrapper estoppel".

These questions were presented and argued in the Armour case, supra, by the defendant in that case. As evidenced by the statements of counsel in the instant case (Rec. p. 33 et seq.) respecting these matters and the statements of the Court as they appear in its Decision in the Armour case, it is obvious that exactly the same contentions, based on the same facts and arguments were made by defendant in the Armour case as made by defendants here.

These contentions the Illinois District Court decided against defendant, saying, 90 F.Supp. 771: "The file wrapper estoppel does not apply to this case for various reasons. * * * The court finds from the file wrapper that there was no abandonment by Hunt of any portion of his invention which would perform substantially the same thing in substantially the same way and with substantially the same results."

The Illinois Court further held that "If the claims be susceptible of two constructions that construction shall be given to it which will secure to the patentee his actual invention, rather than to adopt a construction fatal to the grant. * * * Neither can this result be avoided, as defendant seeks to avoid it, by the adoption of mechanical equivalents." In the course of its Decision the Court in the Armour case sets forth its reasons and cites a number of authorities supporting its views. On the question of file wrapper estoppel, this Court agrees with the conclusions of the Court in the Armour case and here adopts and follows its reasoning.

In their brief (p. 8) defendants state: "There are three types of fingers which were charged to be infringed, one like defendants' Exhibit L, another like plaintiffs' Exhibit 48 and a third like Exhibit 49. The finger, Exhibit 49, is the same as Exhibit 3a of the Preliminary Injunction hearing. Finger L is in substantially all respects the same as the hollow finger employed by Campbell and Thomas which your Honor held was an infringement of Claims 2, 3, 7, 10, 12, 14, 17 and 19. Finger, Exhibit 48, was like the finger employed by Campbell and Thomas when charged with contempt".

In oral argument, the following statements were made:

"The Court: What I would like to get now, without any reference or argument about it,—let me have the exhibit or exhibits now that are charged to infringe in this particular case.

"Mr. Richey (of Counsel for Plaintiffs): The machine employing this finger.

"The Court: That is Exhibit L.

"Mr. Richey: Defendant's Exhibit L.

"The Court: Is that the only one?

"Mr. Richey: No, sir. These two, this is Exhibit 48 and this is Exhibit 49.

"The Court: Now, those three exhibits illustrate or are exhibits of the fingers that are charged to infringe in this particular case; is that correct?

"Mr. Schmieding: That is correct.

"The Court: Do you agree with that, Mr. Schmieding?

"Mr. Schmieding: Yes, sir.

"Mr. Richey: Infringe the finger claims and then the machine claims by the rotating drum with these fingers on.

"The Court: Those are the fingers?

"Mr. Richey: Yes. Exhibit L was the same as in the Campbell main case. This one, Exhibit 48, was the same as in the Campbell contempt proceedings.

"The Court: All right.

"Mr. Richey: And this one 49 differs from 48 just in the mechanical difference that this is circular and that is elliptical, and this is substantially the same as the finger held to infringe in the Iowa case by Judge Graven".

It was further stated by counsel for defendants in oral arguments (p. 21) as follows: "Mr. Schmieding: * * * Now as to Plaintiffs' Exhibit 48 which is charg-

ed to infringe, your Honor has already held that that finger, or a finger like Exhibit 48, is an infringement of the patent in the Campbell contempt proceedings. There is nothing that we can do about that".

The Court is of the opinion and so finds that the machines manufactured and sold by defendants, which machines are illustrated in Plaintiffs' Exhibits 2, 3, 4 and 7, and the Fingers sold by the defendants, exemplified by Plaintiffs' Exhibits 48 and 49, and Defendants' Exhibit L, operate in the same way and obtain the same results as the machine and finger disclosed in the Hunt patent in suit, and are substantially identical therewith in structure; that they do the same work in substantially the same way and accomplish substantially the same results as the device of the patent in suit and that therefore, the machines referred to do infringe Claims 2, 3, 7, 10 and 17 and the fingers referred to do infringe Claims 12, 14 and 19 here in issue.

In Cleveland Automatic Machine Co. v. National Acme Co., 6 Cir., 52 F.2d 769, the Court at page 772, says: "Appellant's device does the same work in substantially the same way, and accomplishes substantially the same result as the machine of the Trobeck patent and this is infringement. Gordon Form Lathe Co. v. Walcott Machine Co., 6 Cir., 32 F.2d 55, 61". Union Paper-Bag Machine Company v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935; Nordberg Mfg. Co. v. Woolery Machine Co., 7 Cir., 79 F.2d 685; Hunt v. Armour, supra.

In a recent decision (May 29, 1950) in the case of Graver Tank & Mfg. Co., Inc., v. Linde Air Products Company, 70 S.Ct. 854, 856, the Supreme Court says: "But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system."

### III.

Upon a consideration of the whole of the record and the briefs and arguments of counsel and the applicable law, the Court has arrived at the following Findings of Fact:

1. This is a suit under the Patent Laws of the United States charging Defendants with Infringement of United States Patent No. 2,300,157, issued to George R. Hunt on October 27, 1942, pursuant to an application filed November 16, 1939. The patent is for a "Feather-picking apparatus for fowls and the like."

2. Plaintiff, Anna May Hunt, as Administratrix of the Estate of George R. Hunt, deceased, has been substituted as plaintiff for George R. Hunt, and as such administratrix is the owner of the legal title of the patent in suit. Plaintiff Conrad B. Mueller was at the time of the filing of the Complaint in this case the owner of the equitable title of the patent in suit by virtue of an exclusive license agreement dated February 14, 1940. Plaintiff, Greenbrier Company, an Ohio corporation of Cleveland, Ohio, is the assignee of the entire right, title and interest of plaintiff Conrad B. Mueller in and to the license agreement just referred to and in and to the equitable title of the patent in suit.

3. Defendant Robert F. Wolfinger, residing at Delaware, Ohio, has at least during part of the time since October 9, 1945, been doing business at Delaware, Ohio, first under the name of Superior Manufacturing Company, and later under

the name The S. & W. Sales Company, manufacturing and selling the accused poultry picking machines illustrated in Plaintiffs' Exhibit 2, and selling the poultry picking machines illustrated in Exhibits 3, 4 and 7 and the fingers exemplified by Plaintiffs' Exhibits 48 and 49 and Defendant's Exhibit L.

4. Defendant Ray H. Peak, residing at Ashley, Ohio, was granted leave to intervene as a joint Defendant. For at least part of the time since October 9, 1945, Defendant Ray H. Peak has been doing business as Superior Manufacturing Company at Delaware, Ohio, manufacturing the accused machines illustrated in plaintiffs' Exhibits 3, 4 and 7, equipped with the accused fingers exemplified by plaintiffs' Exhibits 48 and 49 and selling such machines to Defendant Robert F. Wolfinger and others.

5. Claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent in suit are here in issue. Of these, Claims 2, 3, 7, 10 and 17 are machine claims and Claims 12, 14 and 19 are finger claims. Original Claim 16 of the patent which was directed to a method was disclaimed by plaintiffs on February 26, 1947, after the decision of the Sixth Circuit Court of Appeals (on February 3, 1947) in the case of Campbell v. Mueller, 159 F.2d 803, affirming the decision of this Court, 68 F.Supp. 464, holding Claim 16 invalid.

6. Each of the claims here in suit was held valid by this Court in the case of Mueller v. Campbell, 68 F.Supp. 464, which holding was affirmed by the Court of Appeals for the Sixth Circuit, 159 F.2d 803.

7. The instant cause was before this Court on Plaintiffs' motion for a Preliminary Injunction. The Court rendered a decision on that motion on May 1, 1946, 68 F.Supp. 485. After some further proceedings and orders were entered, defendants appealed to the Circuit Court of Appeals for the Sixth Circuit. That appeal was dismissed February 2, 1948 for the reasons stated by the Court in its opinion. Wolfinger v. Mueller, 6 Cir., 165 F.2d 844.

8. The device shown and described in the Hunt patent in suit consists of an apparatus used in the poultry business for picking feathers from fowl in the course of preparing poultry for the market. The machine comprises a structure consisting of a drum mounted in a frame and revolved by an electric motor, having flexible fingers arranged completely around the drum and extending outwardly from the periphery thereof. In operating the device, a chicken (or other fowl) which has previously been scalded is pressed against the revolving drum, and the fingers remove the feathers by a rubbing or scrubbing action. The operator manipulates the chicken by turning it and twisting is so that all parts of the body contact the fingers of the revolving drum.

9. The problem which existed in the art prior to the invention covered by the Hunt patent in suit was in general to pluck poultry (fowl) mechanically and specifically to remove feathers from poultry rapidly and effectively without injury to the poultry and in such a manner that quantity production could be obtained.

10. From time immemorial poultry has been plucked by hand. Hand plucking had many disadvantages which had long been recognized in the art. Hand plucking was slow and laborious, very unsanitary, expensive, and involved considerable loss from scuffing, barking, or breaking the skin of the poultry.

11. Hunt solved the problem of rapidly and effectively removing the feathers from poultry by machine so that quantity production could be obtained, but without injury to the poultry.

12. Of the twelve prior art patents relied upon by defendants in this case, nine, Gottfried German Patent 382,245 (Ex.H-1), Jahns German 450,571 (Ex.H-2), Morrison 837,330 (Ex.H-3), Griggs 920,566 (Ex.H-4), Berg 1,217,393 (Ex.H-5) Kohlhepp 1,323,639 (Ex.H-6), Bouda 1,372,595 (Ex.H-7), Richards 1,755,665 (Ex.H-9), and Swanson 1,889,228 (Ex.H-10) were introduced and relied upon by the defendants in the case of Mueller v. Campbell, and in the decision of this Court, 68 F.Supp. 464, and in the decision of the Court of Appeals of the Sixth Circuit, 159 F.2d 803, were found not to anticipate

any of Claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent here in suit. This Court again finds that these patents do not anticipate or negative the novelty of any of the claims in suit for the same reasons. Of the remaining three patents, the patents to Heaslet, 2,030,587 (Ex.H-11) and 2,114,-263 (Ex.H-12) relate to an art nonanalogous to the art of picking poultry and differ from the Hunt patent in suit in structure, mode of operation and results. The remaining patent relied upon by defendants, the Vestine Patent No. 1,695,128 (Ex.H-8), discloses a machine similar to that of German Patent 382,246 (Ex.H-1) and differs from the Hunt patent in suit in structure, mode of operation and results. These additional citations are not of such importance as to require further discussion.

13. There is no anticipation of Claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent in suit.

14. The machine of the Hunt patent in suit met with immediate and continued commercial success. Plaintiffs Conrad B. Mueller and the Greenbrier Company, the Barker Poultry Equipment Company of Ottumwa, Iowa, the Ashley Machine Company of Greenberg, Indiana, the Pickwick Corporation of Cedar Rapids, Iowa, and Harry G. Brooks of San Gabriel, California, have been manufacturing and selling machines licensed under the Hunt patent in suit. These machines were sold in increasing quantities until 1942 when production was restricted by the scarcity of labor and material caused by the war, and since 1944 the machines have continued to be sold in increasing quantities.

15. The commercial success of the device of the Hunt patent in suit has not resulted from advertising but rather from actual demonstrations of machines embodying the invention and the merit and achievement of machines in use.

16. The machine defined by each of the Claims 2, 3, 7, 10 and 17 and the finger defined by each of Claims 12, 14 and 19 of the Hunt patent in suit, is new and useful, accomplishes important new results and embodies patentable invention.

17. None of the Hunt claims in suit is indefinite or ambiguous.

18. Each of Claims 2, 3, 7, 10, 12, 14 17 and 19 of the patent in suit is valid.

19. Plaintiffs have not unreasonably delayed in disclaiming Claim 16 of the patent in suit, nor was there a failure on the part of plaintiffs to withdraw Claim 16 from this suit within a reasonable time after disclaimer.

20. The machines manufactured and sold by the Defendants, which machines are illustrated in Plaintiffs' Exhibits 2, 3, 4 and 7 and the fingers sold by the defendants, exemplified by plaintiffs' Exhibits 48 and 49 and Defendant's Exhibit L operate in the same way and obtain the same results as the machine and finger disclosed in the Hunt patent in suit and are substantially identical therewith in structure. The slight differences in shape and in the manner in which increased flexibility and decreased weight are obtained at the outer ends of the fingers between the defendants' fingers, Plaintiffs' Exhibits 48 and 49, and the fingers disclosed in the Hunt patent in suit do not affect the functions of the fingers. The removal of the rubber from the outside instead of from the inside of the finger is a mere reversal of parts and does not change the operation and result.

21. The Hunt patent in suit is not limited to hollow fingers. Claims 3, 14, 17 and 19 in suit do not recite the hollow feature which is recited in some of the other claims. The defendant's machines and fingers illustrated in Plaintiffs' Exhibit 2, and exemplified by Defendants' Exhibit L respond literally to Claims 2, 7, 10, 12, 17 and 19 in suit and are the equivalents of the machine and fingers disclosed in the patent in suit. The Defendants' machines and fingers illustrated in plaintiffs' Exhibits 3, 4 and 7, and exemplified by plaintiffs' Exhibits 48 and 49 respond literally to Claims 3, 14, 17 and 19 and differ in structure from Claims 2, 7, 10 and 12 only immaterially in matters of form and position, which do not affect the offices performed or the principle of operation, and are the equivalents of the machine and finger disclosed in the patent in suit.

22. There is no file wrapper estoppel which prevents the claims in suit from being infringed by the Defendants' ma-

chines and fingers. Plaintiffs are not estopped by the file wrapper of the Hunt patent in suit from covering machines and fingers which are equivalents of the fingers and machine disclosed and claimed in the patent, including the defendants' machines and fingers illustrated in plaintiffs' Exhibits 2, 3, 4 and 7 and exemplified by plaintiffs' Exhibits 48 and 49 and Defendants' Exhibit L.

23. The defendants' machines and fingers are not identical or substantially identical in mode of operation and results with anything in the prior art and are not the equivalents of anything in the prior art.

24. The machine claims 2, 3, 7, 10 and 17 here in issue are for new and patentable combinations as distinguished from non-patentable aggregations and from old combinations.

25. Plaintiffs have not used and are not using the patent in suit in an improper or illegal manner.

26. The plaintiffs have not conspired or combined with any other persons, firms or corporations to control and restrain interstate trade and commerce in poultry picking machines in violation of the Sherman and Clayton Anti-Trust Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq.

27. No evidence was offered by defendants to sustain the defense of unclean hands. Plaintiffs have not come into this court or into this case with unclean hands.

28. Defendants have failed to support or establish a basis for their prayer for an accounting or damages. Defendants have not been damaged by plaintiffs and are entitled to no accounting or awarding of damages.

29. Defendants have failed to support the allegations of their counterclaim and it should be dismissed.

### Conclusions of Law

1. This Court has jurisdiction of the parties to and the subject matter of this action.

2. Hunt patent in suit No. 2,300,157 is not anticipated, discloses patentable invention and each of Claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent is valid.

3. Defendant, Robert F. Wolfinger, doing business as Superior Manufacturing Company, has infringed Claims 2, 3, 7, 10, and 17 of the patent in suit by making, using and selling and causing to be made and sold and used, the machines illustrated in plaintiffs' Exhibit 2, and has infringed Claims 12, 14 and 19 by making, using and selling and causing to be made, sold and used, fingers exemplified by Defendants' Exhibit L. The defendants and each of them have infringed each of Claims 2, 3, 7, 10 and 17 by making, using and selling and causing to be made, used and sold the machines illustrated in plaintiffs' Exhibits 3, 4 and 7, and have infringed each of Claims 12, 14, and 19 by making, using and selling and causing to be made, used and sold, the fingers exemplified by plaintiffs' Exhibits 48 and 49.

4. Plaintiffs do not come into this Court or this case with unclean hands.

5. Plaintiffs have not made any improper or illegal use of the patent or violated the Sherman or Clayton Anti-Trust Acts in connection with the patent in suit or the machines manufactured thereunder.

6. Plaintiffs have not misused the patent in suit for any of the reasons assigned and asserted by defendants nor for any other reason so far as disclosed by the record in this case.

7. Defendants' counterclaim is dismissed.

8. Plaintiffs are entitled to an Injunction against further infringements by defendants of the claims in issue of the patent in suit; to an accounting by defendants for damages, and to their court costs herein incurred.

9. Plaintiffs are entitled to their costs, necessary disbursements and reasonable attorneys' fees involved in their defense of the appeal taken by defendants in this case to the Sixth Circuit Court of Appeals from the order granting a Preliminary Injunction, which appeal was dismissed by the Court of Appeals, and to their costs, necessary disbursements and reasonable attorneys' fees for defending themselves

against the charges of unclean hands and misuse of the patent in suit in this cause.

Counsel may prepare and submit an order in accordance herewith.